410

Consolidated Aluminum Corporation, Appellant, *v.*
Monroe County Board of Revision et al., Appellees.

(No. 80-1296—Decided June 17, 1981.)

412

*Messrs. Glander, Brant, Ledman & Newman, Mr. Charles
F. Glander* and *Mr. James H. Ledman,* for appellant.
*Ennis & Roberts Co., L.P.A., Mr. William J. Ennis* and
*Mr. J. Michael Fischer,* for appellees.

*Per Curiam.* First, we point out the obvious law that "the fair market value of property for tax purposes is a question of fact, the determination of which is primarily within the province of the taxing authorities, and this court will not disturb a decision of the Board of Tax Appeals with respect to such valuation unless it affirmatively appears from the record that such decision is unreasonable or unlawful." *Bd. of Revision* v. *Fodor* (1968), 15 Ohio St. 2d 52.

Also, to make it clear at the outset that we adhere to the principle previously set forth in *Conalco* v. *Bd. of Revision* (1977), 50 Ohio St. 2d 129, we restate that, "the best evidence of the 'true value in money' of real property is an actual, recent sale of the property in an arm's-length transaction."

For a complete understanding of the posture of this cause, it should be pointed out that this court, upon the second review in *Conalco* v. *Bd. of Revision* (1978), 54 Ohio St. 2d 330, held in effect that the board, after finding that appellant's allocation resulted in a distorted valuation, and therefore unusable, should have determined the true value in money of the property, and in so doing should not have relied exclusively on the appraisal value as determined by the Allied mass appraisal for the county. Also, it is important to note that this court did not instruct that the board must use the value as allocated by the appellant. The court, in its opinion, stated that the board must receive all competent evidence in order to determine the true value of the property. *Id.* at 332.

Here, upon second remand, the board held complete hearings, and received evidence by way of testimony and exhibits, all of which went to the issues of whether the appellant's allocations were acceptable in the determination of the fair market value, and, if not so acceptable, to utilize the other acceptable evidence in so establishing the fair market value of the subject property. The board determined that because of the complexities of the sale involved in this case, it was not possible to make an allocation of a portion of a lump-sum purchase price paid for Olin's entire aluminum division to the Hannibal property. Under the circumstances, this was a reasonable determination by the board. The Board of Tax Appeals is not required, in every instance, and in all events, to accept as the true value in money of real property, an alloca-

tion of a portion of a lump-sum purchase price paid for a group of assets which included the property in question, and where it finds a proper allocation of the lump-sum purchase price to the property in question is not possible it may consider all of the evidence which is before it in determining the true value in money of the property.

The sales transaction which is the subject of this case involved the sale of an entire aluminum division of one of the country's largest companies. It involved eight plants in five states, all of the machinery and equipment in each of these plants, all of the inventory and raw materials, and all other assets. A large lump-sum price was negotiated and paid. There was no separating out or allocation of the purchase price of the various assets at the time of the sale. The board, upon all of the evidence adduced, could reasonably find that there was no readily and reasonably identifiable purchase price paid for the Hannibal property which could be utilized in determining the fair market value for taxation purposes.

As previously stated, after the board made its determination that there could be no proper allocation of the purchase price to the subject property in this case, it had the further duty of taking additional evidence on the issue of fair market value. This it did. The question remains as to whether, based upon such evidence, the conclusion of the board is a lawful and reasonable one.

The board, in making its determination of fair market value here, had four real estate appraisals, and the same number of allocations projected from the lump-sum purchase price of all the assets of Olin's aluminum division. The appraisers' opinions of the value of this property ranged from a low of approximately $6,000,000 to a high of approximately $20,000,000. Upon such evidence, the board concluded that the fair market value of the property was $11,950,000. In this regard, the board accepted neither the values as advanced by the appellant nor the appellee, but instead reviewed the evidence which was in conflict and made a factual determination as to the value of the property involved. We hold that there is evidence upon which the board might reasonably have made such a determination.

Accordingly, we hold that, based upon all of the circum-

416

stances and evidence adduced here, the determination of the Board of Tax Appeals that the fair market value of the Hannibal property of the appellant taxpayer, as of the tax lien date in 1974, was $11,950,000, is reasonable, lawful, and supported by the evidence.

The decision of the Board of Tax Appeals is affirmed.

*Decision affirmed.*

CELEBREZZE, C. J., W. BROWN, POTTER, PALMER, HOLMES and C. BROWN, JJ., concur.

LOCHER, J., dissents.

POTTER, J., of the Sixth Appellate District, sitting for P. BROWN, J.

PALMER, J., of the First Appellate District, sitting for SWEENEY, J.

LOCHER, J., dissenting. After two reversals and two remands in this case, the majority of this court has finally yielded to BTA's free-wheeling decision-making. This is so, in spite of the fact that BTA has refused to conform to this court's directives. BTA continues to ignore our holding in *Conalco* v. *Bd. of Revision* (1977), 50 Ohio St. 2d 129, paragraph two of the syllabus, the first case in this trilogy, which reads as follows:

"In valuing real property sold within three days of the tax lien date in an arm's-length transaction, the best evidence of 'true value in money' is the proper allocation of the lump-sum purchase price and not an appraisal ignoring the contemporaneous sale."

Having authored the opinion in the first decision (50 Ohio St. 2d 129) and concurred in the *per curiam* opinion in the second (54 Ohio St. 2d 330), BTA's intransigence is reason enough for me to dissent. My dissenting opinion in *Youngstown Sheet & Tube Co.* v. *Bd. of Revision* (1981), 66 Ohio St. 2d 398, however, raises another objection.

Here, as in *Youngstown Sheet & Tube,* BTA received two competing appraisals. Conalco asserted a value of $7,816,000. The Monroe County Board of Revision asserted a value of $15,100,000. By assigning the $11,950,000 value, BTA once again splits the difference between the competing values. This

amount is approximately 52 percent of the sum of the appraisals submitted by the taxpayer and the board of revision. In *Youngstown Sheet & Tube, supra,* the amount was 48 percent. The proximity of these figures is a "startling coincidence."

Reading this case together with *Youngstown Sheet & Tube,* I can only conclude that BTA has redefined its function. Rather than performing administrative review of the evidence, BTA has become a mediator.

Accordingly, I would reverse and remand for further proceedings consistent with this opinion.