ELSAG–BAILEY, INC., D.B.A. BAILEY CONTROLS COMPANY, APPELLEE,
*v.* LAKE COUNTY BOARD OF REVISION ET AL; WICKLIFFE CITY
SCHOOL DISTRICT BOARD OF EDUCATION, APPELLANT.

[Cite as *Elsag–Bailey, Inc. v. Lake Cty. Bd.*
*of Revision* (1996), 74 Ohio St.3d 647.]

(No. 95–537—Submitted November 30, 1995—Decided March 1, 1996.)

648

[redacted]

Wayne E. Petkovic, for appellant.

Baker & Hostetler, Lawrence V. Lindbergh and George H. Boerger, and George W. Hawk, Jr., for appellee.

_Per Curiam._ The BOE contends that the $13,700,000 allocated price set forth in the October 31, 1989 conveyance fee statement established the best evidence of value. However, there is no evidence in the record to explain how the allocated price set forth on the conveyance fee statement was derived. When the BOE's own appraiser was asked about the more than four-million-dollar difference in values between his appraisal and the allocated value, he referred to his appraisal, in which he stated, "[c]ertainly the market did not change that much in 26 months, but we believe that the [allocated] sale price included 'value in use' aspects that our value indication does not." Likewise Elsag–Bailey's appraiser stated in his appraisal, "[t]he allocation was done without, to the best of our knowledge, the input of a qualified real estate appraisal."

In a prior case involving an allocated purchase price, _Consol. Aluminum Corp. v. Monroe Cty. Bd. of Revision_ (1981), 66 Ohio St.2d 410, 20 O.O.3d 357, 423 N.E.2d 75, we stated, "[t]he Board of Tax Appeals is not required in every instance, and in all events, to accept as the true value in money of real property, an allocation of a portion of a lump sum purchase price paid for a group of assets * * *." _Id._ at 414–415, 20 O.O.3d at 360, 423 N.E.2d at 78. We further stated in _Consolidated Aluminum Corp._, in referring to a prior opinion in the same case, "[t]his court did not instruct that the board must use the value as allocated by the appellant. The court, in its opinion, stated that the board must receive all competent evidence in order to determine the true value of the property." _Id._ at 414, 20 O.O.3d at 359, 423 N.E.2d at 78. In this case the BTA considered all the

evidence, and based upon its evaluation of that evidence the BTA determined the true value of the property.

The BOE further contends that if the BTA rejected the appraisal offered by the taxpayer, it had to accept the value set by the BOR. The BOE ignores the fact that two different appraisals of the fair market value of the property were presented to the BTA. The opinions of the taxpayer's appraiser and the BOE's appraiser were widely divergent. The BTA evaluated the strengths and weaknesses of the two appraisals and determined its own value. In *Cardinal Fed. S. & L. Assn. v. Cuyahoga Cty. Bd. of Revision* (1975), 44 Ohio St.2d 13, 73 O.O.2d 83, 336 N.E.2d 433, we held in paragraph two of the syllabus that "[t]he Board of Tax Appeals is not required to adopt the valuation fixed by any expert or witness." In paragraph four of the syllabus, we further held that "[t]he fair market value of property for tax purposes is a question of fact, a determination of which is primarily within the province of the taxing authorities, and this court will not disturb a decision of the Board of Tax Appeals with respect to such valuation unless it firmly appears from the record that such decision is unreasonable or unlawful."

In this case, the BTA first analyzed the points upon which the two appraisers agreed. Both appraisers agreed on the highest and best use of the property, and both agreed the cost approach was not proper in this case. Only the BOE's appraiser considered the income approach to value; however, having considered it he stated he believed the sales-comparison approach should be the primary approach to value. Thus both appraisers believed that the sales-comparison approach was the best appraisal method of estimating value.

After reviewing the work of both appraisers, the BTA found it was unable to agree with the conclusions of either appraiser. The BTA rejected the income-capitalization approach. The BTA found the sales-comparison approach to valuation to be the most accurate approach for determining the value of this property. The BTA then reviewed the sales comparables of both appraisers, and found certain comparables upon which it believed it could place some weight. Based on these comparables the BTA arrived at its valuation.

The BOE contends that the BTA's determination of value was a "quotient verdict," in that the fair market value determined by the BTA was approximately 47.5 percent of the sum of the appraisals. The BOE cites no evidence to substantiate its claim that the BTA arrived at a quotient verdict. We reject the BOE's contention. Any time the BTA is presented with a range of values and determines a value within that range, it could be accused of arriving at a quotient verdict. In this case, the BTA adequately explained its reasons for determining fair market value.

We conclude that there was sufficient evidence to support the BTA's determination of fair market value. The decision of the BTA was reasonable and lawful, and, accordingly, it is hereby affirmed.

*Decision affirmed.*

MOYER, C.J., DOUGLAS, WRIGHT, RESNICK, F.E. SWEENEY, PFEIFER and COOK, JJ., concur.