[This opinion has been published in *Ohio Official Reports* at 87 Ohio St.3d 62.]

PINGUE, APPELLANT, *v.* FRANKLIN COUNTY BOARD OF REVISION ET AL.,
APPELLEES.

[Cite as *Pingue v. Franklin Cty. Bd. of Revision*, 1999-Ohio-252.]

*Taxation—Real property valuation of forty-four noncontiguous units of a one-hundred-twenty-six-unit condominium project—True value of real property—Purchase of forty-five units within thirteen months of tax lien date established the best evidence of true value.*

(No. 98-1494—Submitted March 16, 1999—Decided October 20, 1999.)

APPEAL from the Board of Tax Appeals, No. 96-P-263.

————————————

{¶ 1} On March 30, 1995, appellant, Guiseppe Pingue, filed a complaint with the Franklin County Board of Revision ("BOR") concerning the valuation of forty-four noncontiguous parcels of real property in Hilliard that Pingue purchased in February 1995 for $2,530,000, or $57,500 per parcel. The forty-four units are part of a one-hundred-twenty-six-unit condominium project built in 1989. Located on each of the forty-four parcels is a three-bedroom, two-and-a-half-bath condominium townhouse unit with a basement and a one-car garage, all essentially identical. The remaining eighty-two units in the project are owned by over thirty different owners, most of whom own only two units each.

{¶ 2} In his complaint, Pingue claimed a true value of $57,500 per parcel, for a total of $2,530,000. The auditor had assessed the forty-four parcels at $74,500 per parcel. The Board of Education of the Hilliard City School District ("BOE") filed a countercomplaint claiming that the forty-four parcels had a true value of $76,000 per parcel.

{¶ 3} At the hearing before the BOR, Pingue introduced the conveyance fee statement, real estate purchase contract, and warranty deed showing that he

purchased the forty-four parcels in February 1995, for the sum of $2,530,000 or $57,500 per parcel. Pingue's only witness was Stanford Goldstein, the general partner of the seller. Goldstein testified to the arm's-length nature of the sale and confirmed that at the closing, Pingue had been given credit of $90,200 for exterior repairs and maintenance, thereby making the final purchase price $55,450 per parcel.

{¶ 4} The BOE introduced the testimony and appraisal of Joseph Wightman. Wightman's evaluation of the parcels was based upon actual sales of units essentially identical to Pingue's that had been sold on an individual basis or in sales of up to four units at once. His review of the sales in the same development showed that one unit sold in May 1995 for $74,950, two units sold in September 1995 for $72,500 per unit, two units sold in July 1993 for $73,300 per unit, and four units sold in January 1991 for $75,000 per unit. Wightman also reviewed current and prior listings for other units whose asking prices ranged from $74,950 to $79,950. Wightman's appraisal estimated the value of the forty-four parcels to be $74,000 per parcel as of January 1, 1994.

{¶ 5} The BOR rejected the sales price as the true value of the parcels, apparently accepting the BOE's argument that it represented a bulk sale reflecting a discount for the large number of units sold. Consequently, the BOR relied upon the appraisal evidence and reduced the valuation per parcel from $74,500 to $74,000.

{¶ 6} Before the Board of Tax Appeals ("BTA"), the parties agreed to waive a hearing, and the matter was submitted on the record made before the BOR. After reviewing the record, the BTA concurred with the BOR and accepted Wightman's appraisal as probative and credible evidence. The BTA adopted Wightman's valuation of $74,000 per parcel.

—————————————

*Todd W. Sleggs & Associates, Todd W. Sleggs* and *Susan K. French-Scaggs*,

for appellant.

*Ronald J. O'Brien*, Franklin County Prosecuting Attorney, and *Matthew H. Chafin*, Assistant Prosecuting Attorney, for appellees Franklin County Board of Revision and Franklin County Auditor.

*Teaford, Rich & Wheeler* and *Jeffrey A. Rich*, for appellee Board of Education of the Hilliard City School District.

_____

**LUNDBERG STRATTON, J.**

{¶ 7} Pingue contends that his purchase of the forty-four parcels within thirteen months of the tax lien date established the best evidence of true value. We agree. Consequently, we find that the BTA acted unreasonably and unlawfully, and we reverse the decision of the BTA.

{¶ 8} R.C. 5713.03 requires that the auditor, when determining the true value of any tract, lot, or parcel of real estate, *shall consider* the sale price *as the true value* for taxation purposes if the property has been the subject of an arm's-length sale between a willing seller and a willing buyer within a reasonable length of time, either before or after the tax lien date. Furthermore, this court has repeatedly held that an actual, recent sale of property in an arm's-length transaction is the best evidence of its "true value in money." *Columbus Bd. of Edn. v. Fountain Square Assoc., Ltd.* (1984), 9 Ohio St.3d 218, 219, 9 OBR 528, 529, 459 N.E.2d 894, 895; *Consol. Aluminum Corp. v. Monroe Cty. Bd. of Revision* (1981), 66 Ohio St.2d 410, 414, 20 O.O.3d 357, 359, 423 N.E.2d 75, 78; *Conalco v. Monroe Cty. Bd. of Revision* (1977), 50 Ohio St.2d 129, 4 O.O.3d 309, 363 N.E.2d 722. There is a rebuttable presumption that an arm's-length sale transaction reflects the true value of property. *Cincinnati School Dist. Bd. of Edn. v. Hamilton Cty. Bd. of Revision* (1997), 78 Ohio St.3d 325, 327, 677 N.E.2d 1197, 1199.

{¶ 9} It is only when the purchase price does not reflect the true value that a review of independent appraisals based upon other factors is appropriate. *Ratner*

*v. Stark Cty. Bd. of Revision* (1986), 23 Ohio St.3d 59, 23 OBR 192, 491 N.E.2d 680. For example, in *Ratner*, the purchase price did not reflect true value due to abnormally low interest rates on two promissory notes that were well below the market rates. Leaseback arrangements have sometimes distorted the sale price so that it did not reflect true value. *S. Euclid/Lyndhurst Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision* (1996), 74 Ohio St.3d 314, 658 N.E.2d 750; *Cleveland Hts./Univ. Hts. Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision* (1995), 72 Ohio St.3d 189, 648 N.E.2d 811; *Kroger Co. v. Hamilton Cty. Bd. of Revision* (1993), 67 Ohio St.3d 145, 616 N.E.2d 877. Factors involving economic coercion may force a purchase at an excessive price. If so, the sale price is not the most probative evidence of the value of the property. *Lakeside Ave. Ltd. Partnership v. Cuyahoga Cty. Bd. of Revision* (1996), 75 Ohio St.3d 540, 664 N.E.2d 913.

{¶ 10} Here, the BTA did not question the arm's-length nature of the sale between a willing seller and a willing buyer. The sale involved no extraneous factors that affected the sale price, such as a pending bankruptcy, a distress sale, coercion, lease arrangements, or other factors that would cast suspicion on the sale price as representative of true value. Yet the BTA apparently considered the bulk nature of the sale to be a factor that vitiated the sale as an indicator of the true value of the properties. The BTA concurred with the BOR's valuation of these units based upon their highest and best use as individual investor condominiums. The BTA relied upon *Park Ridge Co. v. Franklin Cty. Bd. of Revision* (1987), 29 Ohio St.3d 12, 29 OBR 231, 504 N.E.2d 1116, in which this court held that an owner may, for tax valuation purposes, value multiple parcels as a single economic unit if the highest and best use of the property is as a single unit. *Id.* at paragraph two of the syllabus. *Park Ridge* concerned apartment units in two different locations. However, *Park Ridge* did *not* involve a recent sale transaction for fair market value. Without such a sale, the BOR must rely on appraisals for valuation purposes. Under certain circumstances, as in *Park Ridge*, it may be appropriate to look to the highest

4

and best use of the property in question for tax valuation purposes.

{¶ 11} Here, Pingue purchased forty-four condominiums in the open market in an arm's-length transaction. The reality of the marketplace was that the seller wanted to sell forty-four condominiums and found one buyer for all forty-four units but only at a price of $57,500 per unit. Had the seller been able to sell each condominium for $74,000 per unit, common sense dictates that the seller would have done so. However, the seller had to discount the price in order to sell all forty-four units at the same time. The BOR concluded that the seller *should have* sold at a higher price without any evidence that the seller *could have* done so. Pingue should be entitled to recognition of the purchase price as the property's value.

{¶ 12} R.C. 5713.03 is clear that the auditor shall consider the sale price in an arm's-length transaction to be the true value for tax purposes. We reaffirm the rule in *Ratner* that appraisal evidence may be considered when the sale price has been influenced by other factors so that it does not reflect the true value of the property. However, in this case, Pingue presented competent, probative, and credible evidence that the sale price was the best evidence of value for the forty-four parcels. The parcels had been on the open market. Both the buyer and the seller voluntarily entered into the transaction. There was no evidence of compulsion or duress. The BTA did not question the arm's-length nature of the sale. Consequently, there was no reason to resort to an appraisal.

{¶ 13} For all the foregoing reasons, we find that the decision of the BTA is unreasonable and unlawful. It is therefore reversed, and the cause is remanded for proceedings in accordance with this decision.

*Decision reversed*
*and cause remanded.*

RESNICK and F.E. SWEENEY, JJ., concur.

PFEIFER, J., concurs separately.

MOYER, C.J., DOUGLAS and COOK, JJ., dissent.

---

**PFEIFER, J., concurring.**

{¶ 14} My views regarding the relative worth of appraisals versus purchase price in real estate valuations were made clear in my concurrence in *Dublin-Sawmill Properties v. Franklin Cty. Bd. of Revision* (1993), 67 Ohio St.3d 575, 577-578, 621 N.E.2d 693, 694-695. In *Dublin-Sawmill*, I wrote that "[t]he best way to determine value of property is through appraisal," and that "[b]lind reliance on purchase price to determine fair market value of real estate is simplistic and naïve." *Id*. Here, however, as in *Dublin-Sawmill*, the appraisal was faulty, and should be given no weight. The way to appraise the condominiums in this case was as a bulk purchase. That was the reality. Instead, the Wightman appraisal was based on the wishful thinking that the condominiums had been sold individually.

{¶ 15} While "purchase price should be regarded as only 'some evidence of value,' " *Dublin-Sawmill* at 578, 621 N.E.2d at 695, purchase price was the only reliable evidence in this case. Therefore, the BTA's valuation should have been based on the actual purchase price. I accordingly concur.

---

**COOK, J., dissenting.**

{¶ 16} I respectfully disagree with the majority's decision to reverse the Board of Tax Appeals in this case.

{¶ 17} The majority believes that the R.C. 5713.03 presumption (that a recent sale price is the best evidence of true value) applies to Pingue's transaction involving the price that he paid for the purchase of multiple, noncontiguous condominium units, each of which is deemed to be a separate parcel for purposes of real estate taxation. See R.C. 5311.11. The presumption in R.C. 5713.03, however, does not apply to Pingue's multiple-parcel purchase because the statutory scheme prefers the valuation of *individual parcels* unless multiple parcels are shown to be a single economic unit.

6

**{¶ 18}** We start with the fundamental proposition that calculations for real property valuation and taxation proceed from the basic unit of a parcel or lot. To this end, R.C. 5713.01 requires the auditor to determine the true value in money of "*each lot or parcel* of real estate." (Emphasis added.) R.C. 5713.01(B). Likewise, the valuation statute at issue in this case, R.C. 5713.03, permits the taxpayer to benefit from a presumption that the purchase price represents the true value for taxation purposes of "any tract, lot, or parcel * * * *if such tract, lot, or parcel* has been the subject of an arm's length sale between a willing seller and a willing buyer[.]" (Emphasis added.) R.C. 5713.03.

**{¶ 19}** The language of these Revised Code sections, as well as the cases considering multiple-parcel issues, such as *Park Ridge, Youngstown Sheet & Tube,* and *Banbury*,[1] all support the view that the "sale presumption" applies to individual-parcel sales, unless multiple parcels are shown to have a "highest and best use" as a single economic unit. The "sale presumption," therefore, does not encompass aggregate valuations of various parcels of real estate unless the multiple parcels can be said to be part of an economic land unit.

**{¶ 20}** Pingue paid an aggregate price for forty-four individual noncontiguous parcels. Pingue's purchase price allocation to each parcel was *not* the result of a sale of "*such* tract, lot, or parcel," as the plain language of the presumption in R.C. 5713.03 requires. Rather, it was the result of a sale of forty-four parcels, with no showing that those forty-four parcels should be considered together as an economic unit. Pingue simply divided the aggregate price he paid

---

1. *Park Ridge Co. v. Franklin Cty. Bd. of Revision* (1987), 29 Ohio St.3d 12, 29 OBR 231, 504 N.E.2d 1116, at paragraph two of the syllabus ("The true value for real property may well depend on its potential use as an economic unit."); *Banbury Village, Inc. v. Cuyahoga Cty. Bd. of Revision* (1990), 53 Ohio St.3d 251, 559 N.E.2d 1356 (affirming a BTA valuation based on actual sales of individual units not owned by taxpayer, even though taxpayer's appraiser sought aggregate valuation of 175 townhouse units); *Youngstown Sheet & Tube Co. v. Mahoning Cty. Bd. of Revision* (1981), 66 Ohio St.2d 398, 405, 20 O.O.3d 349, 354, 422 N.E.2d 846, 850 (holding that "the BTA is not bound to adopt any particular method of valuation to the exclusion of other methods in its determination of true value").

by the number of units purchased and declared the result, $57,500, to represent the per parcel sale price. But that $57,500 price was determined by *allocation* per parcel rather than by an arm's length *negotiation* for the sale of "such tract, lot, or parcel." Such a sale is not the best evidence of the value of *each* of the forty-four parcels, if the highest and best use of each individual condominium parcel is as a single unit.

**{¶ 21}** If, on the other hand, the highest and best use of these forty-four units is as a single economic unit, and future sales of the units would not be sales of each condominium but rather as a "package," the taxpayer could introduce evidence to support that position. The aggregate price could then properly be allocated among the units for a per parcel price. In *Park Ridge*, for instance, this court confirmed that "tract, lot, or parcel" are terms used interchangeably by the Revised Code. Though the "sale presumption" was not at issue in *Park Ridge*, the ruling there proceeded from the premise that R.C. 5713.01 requires the auditor to determine the true value in money of each lot or parcel of real estate, and that unless multiple parcels could be deemed an economic unit, the plain meaning of "lot," "parcel," and "tract" requires the auditor to value parcels individually. See *Park Ridge* at 15-16, 29 OBR at 234, 504 N.E.2d at 1120.

**{¶ 22}** Therefore, if real property can be shown to have a "highest and best use" as a single economic unit, the fact that it includes multiple parcel numbers does not preclude its being valued as a single unit. *Park Ridge*, 29 Ohio St.3d at 16, 29 OBR at 234-235, 504 N.E.2d at 1120-1121. However, the discount attributed to a bulk sale is not entitled to the presumption of true value for each parcel, unless the taxpayer demonstrates that the multi-parcel purchase or sale corresponds to the proper economic unit.

**{¶ 23}** For the foregoing reasons, I would affirm the decision of the Board of Tax Appeals in this case.

MOYER, C.J., and DOUGLAS, J., concur in the foregoing dissenting opinion.

January Term, 1999

_____