St. Bernard Self-Storage, L.L.C., Appellant, v. Hamilton County Board of Revision et al., Appellees.

[Cite as *St. Bernard Self-Storage, L.L.C. v. Hamilton Cty. Bd. of Revision,* 115 Ohio St.3d 365, 2007-Ohio-5249.]

(No. 2006–0884—Submitted May 23, 2007—Decided October 10, 2007.)

Moyer, C.J.

{¶ 1} In this case, the parties agree that the arm's-length, negotiated purchase of a self-storage facility is the basis for measuring the value of the real property for the 2002 tax year. They disagree on whether the allocation in the purchase contract of approximately half the purchase price to the goodwill of an associated business should be subtracted from the price to yield the value of the real estate. The appellant, St. Bernard Self–Storage, L.L.C. ("St. Bernard"), asserts that the contractual allocation to goodwill reflects a business value that must be separated from the realty. The Board of Tax Appeals rejected that view, finding that the amount allocated to goodwill constituted part of the value of the realty. We conclude that the order of the Board of Tax Appeals is supported by the record and consistent with the law, and we therefore affirm it.

I

{¶ 2} At issue are approximately 4.04 acres used for the operation of a self-storage business that offers customers 352 non-climate-controlled storage units of varying sizes, along with 63 outside spaces on a gravel lot that are used primarily for the storage of automobiles, buses, boats, and similar items. The interior units

are housed in seven one-story metal buildings bolted to concrete slabs. A small additional building functions as an office. Customers pay a monthly charge to store items at the facility.

{¶ 3} St. Bernard acquired the property from predecessors who had improved the land and started the self-storage business. By agreement dated June 30, 2000, St. Bernard purchased the self-storage business assets. The purchase agreement is a standard form for purchasing commercial real property. The contract sets forth certain conditions to be fulfilled before closing, including the consolidation of parcels and a subdivision that would create the parcel to be transferred. The sellers also agreed to create easements over property not being sold in order to furnish access to the purchased premises. During an interim period, while the sellers worked to fulfill the conditions, the contract provided that St. Bernard could take over management of the business.

{¶ 4} The contract purchase price is $1,950,000, prorated as follows: "(a) Real Estate and Personal Property (other than Goodwill)—$1,000,000 and (b) Goodwill—$950,000." The closing statement of the contract reiterates the allocation with an additional breakout: $25,000 of the $1,000,000 is allocated to personal property, while the remaining $975,000 is allocated to realty, and the goodwill allocation remains at $950,000. Appellee board of revision and the Board of Tax Appeals honored the allocation to personal property but regarded the allocation to goodwill as constituting part of the value of the real property.

## II

{¶ 5} At the Board of Tax Appeals hearing, James Olman, a ten percent owner and the managing member of St. Bernard, testified that the allocation had been fully negotiated and that it reflected his thinking about the merits of the purchase. Olman specifically asserted that the goodwill figure of $950,000 had been negotiated and reflected what he understood to be the "good relationship with the community."

{¶ 6} Also at the Board of Tax Appeals hearing, St. Bernard sought to substantiate the separation of goodwill from the price of the real property through the written reports and testimony of two expert witnesses. One expert, who was a certified public accountant and a certified valuation analyst, prepared a report that determined a business value—separate from the value of the realty—through a direct capitalization method. The expert divided into a three-year average of business earnings a capitalization rate of 22.5 percent, thereby generating an estimated business value of $752,916. This figure is almost $200,000 lower than the amount allocated to goodwill in the purchase contract.

{¶ 7} St. Bernard's other expert, Jerry Fletcher, MAI, ASA, performed an appraisal using fairly standard techniques to determine what he termed the

"value of the subject property fee simple real estate and business value," which amounted to $1,740,000. He then broke out the "real estate upon which real estate taxes should be assessed," which had a value of $1,120,000, and the "value of the business portion of the property," which he determined to be $620,000. The $620,000 was more than $300,000 less than the amount allocated to goodwill under the original purchase contract.

{¶ 8} The techniques Fletcher employed to separate independent business value were admittedly unorthodox. He applied four approaches: (1) he subtracted his cost figure from his total value figure and theorized that the difference constituted business value independent of the realty, (2) he engaged in a "Warehouse Rent Analysis," which involved comparing the rent per square foot for industrial warehouse space in the area with the rent per square foot for St. Bernard's property (in theory, the excess rent for the property reflected the value of a retail business), (3) he developed a "Tax Ratio Analysis," under which he took the ratio of projected sales taxes to property taxes as an indicator of separate business value (in theory, the sales taxes pertained to a separate value of a retail business), and (4) he took the amount allocated to goodwill in the original purchase contract, placed it in a ratio to the total contract price, and applied this ratio to his own estimation of total value to derive a separate value for the business. In reconciling the four approaches, Fletcher emphasized the cost and tax-ratio approaches and derived a percentage of "roughly" 35 percent of total value as separate business value. This fixed the business value at $620,000.

{¶ 9} On cross-examination, Fletcher made a number of important admissions: (1) that he himself had not previously used cost as a method of separating real property value from business value in any case in which he had testified, (2) that his warehouse-rent analysis and his sales-tax-ratio approach to segregating business value were novelties, apparently without foundation in the literature of appraisal, and (3) that though the business value he was identifying was separable from the realty, the two were not separable "in saleable packages," i.e., the business value could not be sold independently of the real property.

{¶ 10} The county auditor also presented evidence at the Board of Tax Appeals hearing. The county's appraiser testified in support of his own valuation report, which determined a value for the real property consistent with the sale price absent any deduction for goodwill. A second expert, Norman Miller, Ph.D., the West Shell Professor of Real Estate and Finance in the University of Cincinnati's Finance Department, also testified, and his testimony is most directly pertinent to the central issue before the court. From a theoretical standpoint, Dr. Miller challenged the idea of separating business value from real property value in the present context. Among other things, he cast doubt upon Fletcher's cost method of differentiating business value from real property value, stating that a purchase

price in excess of cost does not imply the existence of business value, because the purpose of buying income-producing property is to "beat the cost," as Dr. Miller put it. Dr. Miller also opined that goodwill would not exist separate from real property value in the self-storage business, because such a business is "homogenous" and it would make "no sense at all" to speak of goodwill.

{¶ 11} The Board of Tax Appeals issued its decision on April 28, 2006. It first noted that because the board of revision had regarded the amount allocated to goodwill as part of the value of the real property, the burden lay on St. Bernard to persuade the Board of Tax Appeals that the contractual allocation to goodwill should be accepted. On reviewing the evidence, the board found no support for the allocation. Of particular importance in its analysis was the fact that "St. Bernard's business is to lease space," an activity that "clearly appertains to the real property and would be transferred to anyone who purchases the facility." This, along with Dr. Miller's testimony concerning the way in which "entrepreneurial profit" is regarded as a part of the value of real property, formed the basis for the board's conclusion that the value of the real property equaled the sale price less the $25,000 of value assigned to tangible personal property.

{¶ 12} From this decision, St. Bernard appealed to this court.

### III

{¶ 13} The parties first disagree on who should properly have borne the burden of persuasion at the board of revision and at the Board of Tax Appeals. While it is true that the party who challenges the board of revision decision before the Board of Tax Appeals must shoulder a burden of persuasion, the question we confront here is one more specifically tied to the circumstances of this case: whether the proponent of a contractual allocation of value has the burden to show the propriety of the allocation, or whether the opponent has the burden to show that the allocation is not proper. St. Bernard contends that the presence of the goodwill allocation in the purchase contract and the use of that allocation on the conveyance-fee statement establish at least a prima facie validity for the allocation. Under this view of the matter, the burden of rebuttal lay on the auditor. The county auditor, by contrast, argues that the Board of Tax Appeals—and presumably the board of revision as well—had no duty to accept an allocation that appeared suspect or arbitrary on its face. For its part, as already noted, the Board of Tax Appeals simplified this question by emphasizing St. Bernard's burden of persuasion as an appellant who challenged the board of revision's decision.

{¶ 14} Our review of the case law causes us to conclude that the proponent of an allocation of sale price bears an initial burden of showing the propriety of the allocation. The starting point for our analysis is the settled proposition that "the best evidence of 'true value in money' is the proper allocation of the lump-sum

purchase price and not an appraisal ignoring the contemporaneous sale." *Conalco, Inc. v. Monroe Cty. Bd. of Revision* (1977), 50 Ohio St.2d 129, 4 O.O.3d 309, 363 N.E.2d 722, paragraph two of the syllabus. We believe this principle fully comports with our more recent holding in *Berea City School Dist. Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision,* 106 Ohio St.3d 269, 2005-Ohio-4979, 834 N.E.2d 782, ¶ 13, that "when the property has been the subject of a recent arm's-length sale between a willing seller and a willing buyer, the sale price of the property shall be 'the true value for taxation purposes.'" Id., quoting R.C. 5713.03. As a result, we view the *Conalco* syllabus as effectuating the *Berea* doctrine in the context of a bulk sale.

{¶ 15} Bulk sales do differ, however. Unlike a simpler transaction where a single parcel of real property is sold individually, a bulk sale may involve the sale of all the assets of a business, whereby a parcel of real property constitutes one of many business assets sold at the same time for an aggregate sale price. Alternatively, a bulk sale may consist of a sale of numerous real estate parcels at an aggregate price as part of a single deal. In all such cases, a question arises beyond the basic pronouncement of *Berea*: whether the proffered allocation of bulk sale price to the particular parcel of real property is "proper," which is the same as asking whether the amount allocated reflects the true value of the parcel for tax purposes.

{¶ 16} St. Bernard advocates the principle that an allocation presented on the face of a purchase contract, if that contract and that allocation have been negotiated between the parties, should automatically acquire the force of presumptive—if not conclusive—validity. We disagree. While St. Bernard's suggested approach would be simple to apply, it is not appropriate, because there may be various purposes in allocating a purchase price. Even in cases where those purposes are fully legitimate, the amount allocated to a particular parcel does not necessarily reflect the true value in money of the parcel. See *Heimerl v. Lindley* (1980), 63 Ohio St.2d 309, 311, 17 O.O.3d 200, 408 N.E.2d 685.

{¶ 17} In bulk-sale cases, we typically look for corroborating indicia to ensure that the allocation reflects the true value of the property. Where attendant evidence shows reason to doubt such a correspondence, we decline to use the allocation to establish true value. In *Heimerl,* for example, the evidence showed that an allocation of the purchase price of a business to certain personal property on the company's books was performed "for the sole purpose of reducing the parties' federal income tax liabilities" and accordingly was "not intended to reflect the true value of the equipment component of the business." Id. at 309–310, 17 O.O.3d 200, 408 N.E.2d 685. Instead of using the new allocated book value, the taxpayer continued using the previous cost-depreciation schedule in preparing its personal property tax returns.

{¶ 18} In *Heimerl,* we expressly distinguished the issue of allocation from the situation in which the personal property to be valued was the sole subject of the sale. *Heimerl,* 63 Ohio St.2d at 311, 17 O.O.3d 200, 408 N.E.2d 685, citing *Grabler Mfg. Co. v. Kosydar* (1975), 43 Ohio St.2d 75, 72 O.O.2d 42, 330 N.E.2d 924. In *Heimerl,* the value assigned to the property "was an arbitrary apportionment of the whole for federal tax purposes," whereas in *Grabler* the "valuations were direct buy and sell prices of the particular assets." *Heimerl,* 63 Ohio St.2d at 312, 17 O.O.3d 200, 408 N.E.2d 685.

{¶ 19} In the area of real property valuation, we have not hesitated to authorize a departure from a recent sale price when a bulk-sale price cannot properly be allocated.[1] In all of those cases, value was determined without reference to a sale price because no convincing allocation of the sale price was offered. Cf. *Pingue v. Franklin Cty. Bd. of Revision* (1999), 87 Ohio St.3d 62, 717 N.E.2d 293. Although the present case differs from those cases in that the allocation is presented in the purchase contact itself, we hold that in the context of valuing property for tax purposes, such an allocation is not to be taken as indicative of the value of the real property at issue unless other indicia on the face of the contract, the circumstances attending the allocation, or some other independent evidence establishes the propriety of the allocation. It follows that neither the board of revision nor the Board of Tax Appeals was obligated to presume the validity of the allocation to goodwill.

IV

{¶ 20} We now turn to the question whether the Board of Tax Appeals was justified when it concluded that the evidence in the record did not establish the propriety of the contract allocation to goodwill. In reviewing a board decision, we determine whether that decision was "reasonable and lawful." R.C. 5717.04. While we reverse when we find legal error, the board itself " 'is responsible for determining factual issues and, if the record contains reliable and probative support for these [Board of Tax Appeals] determinations,' this court will affirm them." *Satullo v. Wilkins,* 111 Ohio St.3d 399, 2006-Ohio-5856, 856 N.E.2d 954, ¶ 14, quoting *Am. Natl. Can Co. v. Tracy* (1995), 72 Ohio St.3d 150, 152, 648 N.E.2d 483.

{¶ 21} The most prominent piece of evidence before the board was the contract itself. On its face, that contract was a contract for the sale and purchase of real estate—the parties used the standard form for such a transaction, and the

---

1. *Consol. Aluminum Corp. v. Monroe Cty. Bd. of Revision* (1981), 66 Ohio St.2d 410, 20 O.O.3d 357, 423 N.E.2d 75; *Elsag-Bailey, Inc. v. Lake Cty. Bd. of Revision* (1996), 74 Ohio St.3d 647, 660 N.E.2d 1184; *Corporate Exchange Bldgs. IV & V, L.P. v. Franklin Cty. Bd. of Revision* (1998), 82 Ohio St.3d 297, 695 N.E.2d 743.

contract not only referred to the parcel that was sold but conditioned closing on the accomplishment of certain tasks by the sellers, all of which related to the real property. The testimony of James Olman, a principal of St. Bernard, generally confirmed the central importance of the real property to the transaction. Moreover, the auditor and St. Bernard did not dispute *whether* the contract should be used to determine the sale price, even though the parties did disagree on *how* to use it. Under these circumstances, and given all the other evidence before it, the board was fully justified in looking to the sale price under the contract as determinative of the value of the real property pursuant to *Berea*.

{¶ 22} Accordingly, the board's next task was to determine the propriety of the allocations of sale price to personal property and to goodwill. It accepted the allocation to personal property, which was not in dispute, based upon evidence that a certain amount of personal property was transferred as part of the transaction.

{¶ 23} With respect to the allocation at issue, the allocation to goodwill, the board's finding was reasonable and lawful given the record that it had before it. Two factors have crucial significance in this regard.

{¶ 24} First, the board found that "St. Bernard's business is to lease space," a finding fully supported by the record. The income generated by that business derives from St. Bernard's granting the right to use space, either outdoors or within the buildings, and the definition of real property for tax purposes encompasses "rights and privileges * * * appertaining" to the land and improvements. R.C. 5701.02. As a matter of pure logic, rent revenue relates to such rights and privileges and as a result constitutes a part of the value of real property. Accord *Dublin Senior Community L.P. v. Franklin Cty. Bd. of Revision* (1997), 80 Ohio St.3d 455, 460, 687 N.E.2d 426 (when using an income approach in valuing a senior care center, "rental for the apartments" was deemed to constitute "real estate activity" that relates to the value of the real estate, not to a separate business value).

{¶ 25} Second, the board stated that when an owner claims that business value should be deducted, the issue is whether the value "is transferable with the real property, or whether it is detached from real property and can either be transferred independently or remain with the seller." The board correctly found no evidence in the record to support the existence of a business value that could actually be severed from the real estate and be transferred or retained separately. Indeed, we have previously noted that St. Bernard's principal expert, Fletcher, acknowledged that although he thought the business value he was identifying was separable from the realty, the two were not separable "in saleable packages." Since St. Bernard failed to prove the existence of any business value separable from the value of the real property, the allocation to goodwill simply

did not pertain to any such separable value. It follows that the board acted reasonably and lawfully in disregarding that allocation.

{¶ 26} For the reasons stated, the decision of the Board of Tax Appeals is affirmed.

Decision affirmed.

LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

PFEIFER, J., concurs in judgment only.

———

Barrett & Weber, C. Francis Barrett, and M. Michele Fleming, for appellant.

Joseph T. Deters, Hamilton County Prosecuting Attorney, and Thomas J. Scheve, Assistant Prosecuting Attorney, for appellee Hamilton County Auditor.

David C. DiMuzio, Inc., and David C. DiMuzio, for appellee St. Bernard School District Board of Education.

Katz, Greenberger & Norton, L.L.P., Scott H. Kravetz, and Jeff J. Greenberger, urging reversal for amicus curiae, Ohio Storage Owners' Society, Inc.