[Cite as *FirstCal Indus. 2 Acquisitions, L.L.C. v. Franklin Cty. Bd. of Revision*, 125 Ohio St.3d 485, 2010-Ohio-1921.]

FIRSTCAL INDUSTRIAL 2 ACQUISITIONS, L.L.C., APPELLANT, *v*. FRANKLIN

COUNTY BOARD OF REVISION ET AL., APPELLEES.

[Cite as *FirstCal Indus. 2 Acquisitions, L.L.C. v. Franklin Cty. Bd. of Revision*,

125 Ohio St.3d 485, 2010-Ohio-1921.]

*Taxation — Bulk sale — Allocation of lump-sum sales price to various parcels —*
*Burden of proof is on party challenging use of the property's allocated*
*sale price for valuation — Decision affirmed.*

(No. 2009-1505 — Submitted March 31, 2010 — Decided May 6, 2010.)

APPEAL from the Board of Tax Appeals, Nos. 2006-B-1789, 2006-B-1790,

2006-B-1791, and 2006-B-1792.

_____

**O'CONNOR, J.**

**{¶ 1}** This is an appeal from a decision of the Board of Tax Appeals ("BTA") that found the value of four parcels of real property.[1] Appellant, FirstCal Industrial 2 Acquisitions, L.L.C., part of a real estate investment trust, challenges the BTA's determination, which adopted the Franklin County Board of Revision's ("BOR") allocation of the bulk-sale price that FirstCal reported on its conveyance-fee statement. FirstCal contends that the BTA's decision is unreasonable and unlawful because the allocation performed by the BOR lacks a reasonable factual basis and because the BOR and the BTA improperly placed the burden of refuting the validity of that allocation on FirstCal. We disagree and therefore affirm.

**Relevant Background**

---

1. One of the parcels is split into taxable and tax-abated portions but constitutes a single parcel. See *FirstCal Indus. 2 Acquisitions, L.L.C. v. Franklin Cty. Bd. of Revision* (July 28, 2009), BTA Nos. 2006-B-1789, 2006-B-1790, 2006-B-1791, and 2006-B-1792, 2009 WL 2360912, *7, fn. 3.

**{¶ 2}** On March 24, 2006, the South-Western City Schools Board of Education and the Hilliard City Schools Board of Education (collectively, the "school boards") filed five valuation complaints concerning five separate parcels that were listed on a conveyance-fee statement filed by FirstCal Industrial 2 Acquisition, L.L.C., as grantee. The school boards contended that the value assigned to the parcels for tax year 2005 should be proportionately increased in light of the October 2005 bulk sale of the parcels.

**{¶ 3}** On the conveyance-fee statement, FirstCal reported a bulk-sale price of $34,336,121 relating to the properties transferred that were located in Franklin County. That price, according to the fee statement, pertained to six listed parcels. The BTA made a specific finding that in spite of "some duplications and/or errors in listing parcel numbers" on the deed and the fee statement, the sale involved the five parcels challenged by the boards of education in their valuation complaints. *FirstCal Indus. 2 Acquisitions, L.L.C. v. Franklin Cty. Bd. of Revision* (July 28, 2009), BTA Nos. 2006-B-1789, 2006-B-1790, 2006-B-1791, and 2006-B-1792, 2006 WL 2360912, *7, fn. 3. FirstCal did not contest that finding in this court. [2]

**{¶ 4}** Because the sale price reported on the conveyance-fee statement exceeded the aggregate value of the parcels as determined by the auditor, the school boards sought an allocated increase in value of the parcels at issue. [3] In their valuation complaints, the school boards computed a new value for each

---

2. At the BOR , FirstCal asserted that the valuation complaints were jurisdictionally defective because multiple parcels that were located in different taxing districts were referenced on the same complaint. The BTA resolved this issue against FirstCal, and on appeal, FirstCal does not contest the jurisdiction of the administrative tribunals below. *FirstCal Indus.*, 2009 WL 2360912, *3. We do not discern any jurisdictional issue, given that the school boards filed separate complaints for each parcel at issue.

3. The aggregate value assigned to all the parcels by the auditor was approximately $22,350,000 rather than the $34,336,121 sale price reported on the conveyance-fee statement.

parcel by (1) determining each parcel's percentage of the aggregate value assessed as to all parcels by the auditor and then (2) applying that percentage to the $34,336,121 sale price.

{¶ 5} A hearing was held before the BOR on July 18, 2006. FirstCal presented the testimony of William McVeigh, a property-tax manager first for the seller, Duke Realty Ohio, and later for FirstCal. McVeigh was engaged to analyze the property tax aspects of the sale for both buyers and sellers. He testified that he had personal knowledge of "how things were negotiated and why things were negotiated."

{¶ 6} The bulk sale involved 72 industrial warehouse buildings in Ohio that were transferred as part of the sale, and the buildings were located in various counties, including Cuyahoga, Hamilton, and Franklin. Some vacant parcels were also transferred as part of the deal. Motivation for the sale lay in the seller's decision to broadly divest Ohio industrial properties.

{¶ 7} The deal was negotiated as one price. Later, FirstCal allocated the sale price to each county based on its own considerations. FirstCal's goal was to liquidate the properties within 12 months. The seller was merely cutting its losses.

{¶ 8} Because real estate investment trusts were involved, no unitary allocation had to be performed for federal tax purposes. The county-by-county allocations reported on conveyance-fee statements were not separately negotiated aspects of sale price.

{¶ 9} McVeigh stated generally that the arm's-length character of some real estate sales between real estate investment trusts can be questioned because of the special motivations that the parties have in arriving at a sale price, such as portfolio balancing to adhere to Securities and Exchange Commission

requirements. But McVeigh did not assert that this case fell into that category.[4] Moreover, McVeigh testified that some types of bulk-sale prices and allocations pertain to property value more than others do – but he did not testify that the type of allocation among the counties in this case was unrelated to property value.

{¶ 10} One of the five complaints that the school boards originally filed was dismissed because the case was settled. The parties in that case stipulated that the value was the sale price paid to FirstCal when it resold the property in March 2006. The school boards allege – and FirstCal does not dispute – that the sale price in that case was $3,200,000. That amount is lower than the $3,329,400 that would have been allocated to the property pursuant to the school boards' proposal,[5] but it is significantly higher than the value originally assigned by the auditor, $2,400,028.

{¶ 11} The BOR decided to use the reported aggregate sale price and adopted the proposed allocations for the four remaining properties. FirstCal appealed to the BTA, where the school boards sought discovery of documentation relating to the bulk sale. When FirstCal failed to comply and produced a purported purchase agreement but not the other documents requested, it was sanctioned.

---

4. We have acknowledged that the typical motivation of the seller and the buyer constitutes an element in determining whether a transaction constitutes an arm's-length sale. See *AEI Net Lease Income & Growth Fund v. Erie Cty. Bd. of Revision*, 119 Ohio St.3d 563, 2008-Ohio-5203, 895 N.E.2d 830, ¶ 25. But FirstCal does not contest the arm's-length character of the sale.

5. The school boards assert that the difference between the dollar amount that the school boards' complaint would have allocated to that property ($3,329,400) and the actual selling price ($3,200,000) was further allocated among the four remaining properties in the present case. FirstCal does not contest this assertion, and the amounts found by the BOR appear to be consistent with it.

{¶ 12} At the BTA hearing, FirstCal relied on exhibits that included a deed, the alleged purchase agreement,[6] and the conveyance-fee statement. There was no testimony at the BTA hearing.

{¶ 13} In its decision, the BTA discussed the case law and extracted the principle that the "price garnered through a bulk sale is evidence which may be used to value realty sold." *FirstCal,* 2009 WL 2360912, *6. The BTA then imposed the burden of proof on FirstCal as the appellant and as the opponent of using the sale price. Because FirstCal did not discharge that burden, the BTA affirmed the BOR's valuation in accordance with the allocated sale price. Id.

**Analysis**

{¶ 14} R.C. 5713.03 states that the auditor "shall consider the sale price of [any] tract, lot, or parcel to be the true value for taxation purposes" if the sale was "an arm's length sale" that occurred "within a reasonable length of time, either before or after the tax lien date." This case involves a bulk sale of real properties located throughout Ohio that occurred in October 2005, about ten months after the tax lien date at issue.[7] FirstCal, as purchaser in the bulk-sale transaction, reported an allocated portion of the total bulk-sale price as the sale price of those parcels that were located in Franklin County.

{¶ 15} The use of the sale price in this case involved a two-step analysis. First, the school boards urged that the aggregate sale price reported on the conveyance-fee statement constituted the aggregate value of the Franklin County parcels to which it pertained. Next, the school boards suggested – and the BOR adopted – an allocation of the aggregate Franklin County sale price to the individual Franklin County parcels.

---

6. The school boards renew their objection to the authenticity of the document, but none of the specific content of that document appears to be material to the arguments raised by the parties. In any event, resolving the case in the school boards' favor renders the issue moot.

**{¶ 16}** When a single parcel is the subject of a recent, arm's-length sale, the sale price " 'shall be "the true value for taxation purposes." ' " *Cummins Property Servs., L.L.C. v. Franklin Cty. Bd. of Revision*, 117 Ohio St.3d 516, 2008-Ohio-1473, 885 N.E.2d 222, ¶ 13, quoting *Berea City School Dist. Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision*, 106 Ohio St.3d 269, 2005-Ohio-4979, 834 N.E.2d 782, ¶ 13, quoting R.C. 5713.03. We have also stated, however, that the bulk sale differs from the situation in which a single parcel is the subject of a sale because the issue of proper allocation stands between the stated sale price and its character as reflecting the value of any one particular parcel. See generally *St. Bernard Self-Storage, L.L.C. v. Hamilton Cty. Bd. of Revision*, 115 Ohio St.3d 365, 2007-Ohio-5249, 875 N.E.2d 85, ¶ 15 (in a bulk-sale case, a "question arises beyond the basic pronouncement of *Berea*: whether the proffered allocation of bulk sale price to the particular parcel of real property is 'proper,' which is the same as asking whether the amount allocated reflects the true value of the parcel for tax purposes").

**{¶ 17}** In the bulk-sale situation, two overarching principles control our decisions. We articulated those principles in two successive iterations of the same underlying case. In *Conalco, Inc. v. Monroe Cty. Bd. of Revision* (1977), 50 Ohio St.2d 129, 4 O.O.3d 309, 363 N.E.2d 722, paragraph two of the syllabus, we emphasized the importance of the sale price in the bulk-sale context, stating that "the best evidence of 'true value in money' is the proper allocation of the lump-sum purchase price and not an appraisal ignoring the contemporaneous sale."

**{¶ 18}** After *Conalco* had returned to the BTA twice and the BTA had concluded that a probative allocation of the price could not be obtained, the court held that the BTA "is not required, in every instance, and in all events, to accept as the true value in money of real property, an allocation of a portion of a lump-

---

7. The purchase agreement proffered by FirstCal indicates that the bulk sale included properties outside Ohio as well. That fact is not material to our decision of the case.

sum purchase price paid for a group of assets which included the property in question." *Consol. Aluminum Corp.* [formerly Conalco] *v. Monroe Cty. Bd. of Revision* (1981), 66 Ohio St.2d 410, 414, 20 O.O.3d 357, 423 N.E.2d 75. Indeed, when the BTA "finds [that] a proper allocation of the lump-sum purchase price to the property in question is not possible," the BTA "may consider all of the evidence which is before it in determining the true value in money of the property." Id. at 415.

{¶ 19} FirstCal avers that the school boards had the burden of showing the propriety of allocation at both levels.

{¶ 20} As noted, the present case presents two allocations of a total sale price. First, FirstCal as purchaser allocated a portion of the overall bulk-sale price to Franklin County in order to report that amount on the conveyance-fee statement. Second, the BOR allocated the Franklin County amount to the individual Franklin County parcels. We will address the propriety of each allocation in turn.

*FirstCal had the burden to show that its allocation*
*of total sale price to Franklin County did not reflect the*
*aggregate true value of the parcels in the county.*

{¶ 21} When real property is sold, the new owner will record its deed in order to secure its title to the property against other claimants. But a prerequisite to recording is the endorsement of the deed by the county auditor. And before the deed may be endorsed, R.C. 319.202 "requires the new owner to submit a real property conveyance fee statement to the auditor declaring the value of the real property," after which the auditor must, pursuant to R.C. 319.20, "transfer the parcel into the new owner's name on the tax list." *HIN, L.L.C. v. Cuyahoga Cty. Bd. of Revision*, 124 Ohio St.3d 481, 2010-Ohio-687, 923 N.E.2d 1144, ¶ 23.

{¶ 22} In this case, FirstCal acceded to the ownership of the parcels at issue by virtue of the October 2005 sale and, as new owner, submitted the

conveyance-fee statement setting forth the aggregate the sale price, as allocated by FirstCal itself, for the Franklin County properties. Because the BOR and the auditor increased the value of the parcels through an allocation of the aggregate sale price that FirstCal reported, and because the BOR and auditor did so in response to the school boards' claims, FirstCal demands that the county officials or the school boards shoulder the burden of proving the propriety of the amount of sale price that FirstCal itself allocated to Franklin County. We disagree.

{¶ 23} We have held that the "initial burden on a party presenting evidence of a sale is not a heavy one, where the sale on its face appears to be recent and at arm's length." *Cummins Property Servs.*, 117 Ohio St.3d 516, 2008-Ohio-1473, 885 N.E.2d 222, ¶ 41. Indeed, our cases acknowledge that the school board, as the proponent of using a sale price to value real property, typically makes a prima facie case when it presents a recent conveyance-fee statement along with a deed to evidence the sale and the price. *Olentangy Local Schools Bd. of Edn. v. Delaware Cty. Bd. of Revision*, 125 Ohio St.3d 103, 2010-Ohio-1040, 926 N.E.2d 302, ¶ 14, citing *Worthington City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 124 Ohio St.3d 27, 2009-Ohio-5932, 918 N.E.2d 972, ¶ 28.

{¶ 24} Moreover, the basic documentation of a sale invokes a "rebuttable presumption" that "the sale has met all the requirements that characterize true value." *Cincinnati School Dist. Bd. of Edn. v. Hamilton Cty. Bd. of Revision* (1997), 78 Ohio St.3d 325, 327, 677 N.E.2d 1197.

{¶ 25} Accordingly, the burden lay on FirstCal in this case, as the opponent of using the reported sale price, to demonstrate why it did not properly reflect the aggregate true value of the parcels. FirstCal, as purchaser of the property, performed the allocation to Franklin County in the first instance, and FirstCal possesses the information necessary to demonstrate its proper relationship to the value of the Franklin County parcels.

**{¶ 26}** Citing *St. Bernard Self-Storage*, 115 Ohio St.3d 365, 2007-Ohio-5249, 875 N.E.2d 85, is unavailing. In *St. Bernard Self-Storage*, a real estate contract for the purchase of a self-storage facility recited that about half the contract price should be viewed as purchasing the goodwill of the established self-storage business. Id. at ¶ 5. The BTA rejected the allocation and viewed the entire sale price (minus a minor deduction attributable to personal property) as the value of the real estate. Id. at ¶ 11. In affirming, we held that the recitation of the allocation on the face of the contract did not raise a presumption in favor of abiding by it. Id. at ¶ 21. Rather, the owner, as proponent of the allocation, bore the burden of demonstrating the propriety of the allocation. Id. at ¶ 25. It failed to do so.

**{¶ 27}** In *St. Bernard Self-Storage*, the owner and proponent of the allocation of the sale price had to show "corroborating indicia" in support of the allocation. Id., 115 Ohio St.3d 365, 2007-Ohio-5249, 875 N.E.2d 85, ¶ 17. But must the school boards in the present case likewise demonstrate the propriety of the allocation that was made on the conveyance-fee statement itself? We answer the question in the negative because the allocation of the sale price on the Franklin County conveyance-fee statement was performed by the opponent of using the allocated sale price, FirstCal, as purchaser of the parcels within the county.

**{¶ 28}** We have stated that an important purpose of the statutory scheme is "to provide the auditor the necessary information to determine the true value of property based on a property sale in accordance with R.C. 5713.03." *HIN, L.L.C.*, 124 Ohio St.3d 481, 2010-Ohio-687, 923 N.E.2d 1144, ¶ 23. If the allocation that FirstCal itself reported does not properly reflect the aggregate value of the parcels, it is FirstCal's burden to show that it does not. Indeed, FirstCal is in the unique position of knowing how the allocation was made and is best able to access the pertinent documentation.

**{¶ 29}** Although FirstCal presented testimony on the subject to the BOR, neither the BOR nor the BTA found that the testimony specifically impugned the validity of relying on the aggregate sale price reported on the conveyance-fee statement. In that regard, the BOR and the BTA, as finders of fact, did not contravene any legal principle. Nor did they abuse their discretion in evaluating the credibility of the evidence and determining the weight to accord to it. See *Meijer Stores Ltd. Partnership v. Franklin Cty. Bd. of Revision*, 122 Ohio St.3d 447, 2009-Ohio-3479, 912 N.E.2d 560, ¶ 17 (court " ' "will not reverse the BTA's determination on credibility of witnesses and weight given to their testimony unless we find an abuse of * * * discretion, ' " quoting *Strongsville Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision*, 112 Ohio St.3d 309, 2007-Ohio-6, 859 N.E.2d 540, ¶ 15, quoting *Natl. Church Residence v. Licking Cty. Bd. of Revision* (1995), 73 Ohio St.3d 397, 398, 653 N.E.2d 240).

*The pro rata allocation of the aggregate sale price based upon*
*each parcel's proportionate share of the auditor's original assessment*
*was a reasonable method of determining the value of the individual parcels.*

**{¶ 30}** FirstCal also asserts that the BOR and the BTA lacked any evidentiary basis for allocating the aggregate sale price for the Franklin County parcels to the individual parcels. As discussed in the fact section, the allocation assigned to each parcel a share of the aggregate Franklin County sale price in proportion to that parcel's percentage of the aggregate amount of value that the auditor determined for all the parcels, plus an additional increment because the parcel that was subject to a second sale sold for somewhat less than the amount assigned to it. FirstCal characterizes this allocation as a "desk appraisal allocation" performed by the school boards' attorneys and asserts that it gives "no consideration for the age differences, locational differences etc. of the dissimilar properties." We disagree.

10

**{¶ 31}** The BOR and the BTA allocated in accordance with the relative value of the parcels to their aggregate value in accordance with the auditor's original assessments. In *St. Bernard Self-Storage*, 115 Ohio St.3d 365, 2007-Ohio-5249, 875 N.E.2d 85, we spoke of the need for "corroborating indicia" to support an allocated sale price. Id., ¶ 17. The method used in this case presents those indicia. The auditor's valuation presumptively accounted for the "age differences" and the "locational differences" of the Franklin County parcels. See *Colonial Village, Ltd. v. Washington Cty. Bd. of Revision*, 123 Ohio St.3d 268, 2009-Ohio-4975, 915 N.E.2d 1196, ¶ 31 (the auditor's valuation constitutes "default valuation," the validity of which need not be separately proved). Although not rising to the level of a presumptively correct valuation, pursuant to *Colonial Village,* the auditor's initial determination of value for a given tax year possesses an increment of prima-facie probative force, and the percentages derived from those valuations are "corroborating" in the absence of better evidence. As a result, the proportion of each parcel's assigned value to the aggregate value of the parcels possesses the same increment of prima facie probative force. FirstCal was free at the BOR and the BTA to rebut that probative force by presenting its own contrary evidence. It did not do so.

*The pro rata allocation of the aggregate sale price based on the*
*auditor's original assessment was not unlawful.*

**{¶ 32}** FirstCal also maintains that the allocation of aggregate value by the BOR and the BTA violates the legal precepts of our case law. Specifically, FirstCal maintains that the only situation in which the law permits a formulaic allocation of a bulk-sale price is when the properties are fundamentally "identical" units, as in *Pingue v. Franklin Cty. Bd. of Revision* (1999), 87 Ohio St.3d 62, 63, 717 N.E. 2d 293. We disagree. Contrary to FirstCal's suggestion, we have never confronted the situation presented in this case, i.e., a percentage allocation based on the auditor's original assessments. In *Corporate Exchange*

*Bldgs. IV & V, L.P. v. Franklin Cty. Bd. of Revision* (1998), 82 Ohio St.3d 297, 695 N.E.2d 743, the owner sought to reduce the value assigned to two office-building parcels by allocating the bulk purchase price for both parcels in accordance with the relative square footage of rentable office space contained by the respective buildings. Id. at 299. In affirming the BTA's refusal to adopt that allocation, we concluded that the BTA could reasonably and lawfully have found that the owner had "failed to produce sufficient competent and probative evidence to meet its burden of proof." Id. at 300. Nothing in that pronouncement precludes, as a matter of law, an allocation based on the relative value of parcels pursuant to the auditor's original assessments.

{¶ 33} FirstCal's argument is anomalous in this regard. On one hand, FirstCal embraces the auditor's original valuations as the most probative evidence of value, but FirstCal then disclaims the valuations' significance as to the relative value of the parcels to one another. Indeed, the sale of the one parcel tends to support, not refute, the validity of the BOR's allocation because the parcel fetched a sale price almost $800,000 greater than the auditor's original valuation while falling only $129,500 short of the allocated figure that the school boards had suggested for the parcel. Plainly, the BOR's allocation constituted a more accurate determination of value than the auditor's original valuation. Moreover, the BOR's decision to allocate the $129,500 among the other parcels could reasonably be construed as a means of correcting any inaccuracy in the percentages based on the auditor's original valuation.

{¶ 34} As for *Elsag-Bailey, Inc. v. Lake Cty. Bd. of Revision* (1996), 74 Ohio St.3d 647, 660 N.E.2d 1184, and *Consol. Aluminum Corp.*, 66 Ohio St.2d 410, 20 O.O.3d 357, 423 N.E.2d 75, both involved extensive testimony and appraisal evidence that ultimately led to the rejection of the proffered allocation of a bulk-sale price. Neither case stands for the proposition that the proponent of allocating an aggregate sale price based on percentages derived from the auditor's

original assessments must present additional evidence to support the propriety of the allocation.

### Conclusion

**{¶ 35}** For all the foregoing reasons, the BTA acted reasonably and lawfully when it adopted the bulk-sale price as allocated by the BOR. We therefore affirm the decision of the BTA.

Decision affirmed.

PFEIFER, LUNDBERG STRATTON, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

BROWN, C.J., not participating.

_____

Wayne E. Petkovic, for appellant.

Rich & Gillis Law Group, L.L.C., and Mark H. Gillis, for appellees Hilliard City School District Board of Education and South-Western City School District Board of Education.

_____