[Cite as *Bedford Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision,* 132 Ohio St.3d 371, 2012-Ohio-2844.]

BEDFORD BOARD OF EDUCATION, APPELLEE, *v*. CUYAHOGA COUNTY BOARD OF

REVISION ET AL., APPELLEES; ALEXANDER ROAD, L.L.C., APPELLANT.

[Cite as *Bedford Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision,*

132 Ohio St.3d 371, 2012-Ohio-2844.]

*Taxation—Real property—Valuation—Recent, arm's-length sale price is presumptive true value for taxation purposes—Board of Tax Appeals must consider and weigh evidence that sale price was not proper indicator of true value due to seller's tax motivations—Proponent of using value other than sale price has burden of proving that sale price is not reflective of true value.*

(No. 2010-0339—Submitted June 20, 2012—Decided June 27, 2012.)

APPEAL from the Board of Tax Appeals, No. 2007-M-1059.

_____

**Per Curiam.**

{¶ 1} In this appeal of a real-property-valuation case, the owner of four contiguous parcels improved with 103,700 square feet of warehouse space challenges an increase to the 2006 valuation of its property that was ordered by the Board of Tax Appeals ("BTA") at the instigation of the Bedford Board of Education ("school board"). The BTA thereby reversed the decision of the Cuyahoga County Board of Revision ("BOR"), which had retained the auditor's valuation of $3,713,500. The BTA valued the property by using the allocated portion of the March 2006 sale price, which increased the valuation to $4,835,000.

{¶ 2} On appeal, the owner, Alexander Road, L.L.C., contends that it proved that the allocated sale price is not reflective of market value: first, through testimony regarding the allocation, and second, by showing that two principal tenants departed from the premises at or shortly after the purchase. It also argues in the alternative that if the sale price is held to furnish the criterion of value, the figure should be $4,698,700 rather than $4,835,000, reflecting the $136,300 deduction for

personal property set forth on the conveyance-fee statement. The school board contests all of these assertions.

{¶ 3} We hold that the BTA erred by ignoring and failing to weigh the significance of the testimony regarding the seller's tax motivations in allocating the sale price to the subject property. Because it is the duty of the BTA to weigh the evidence and determine the facts concerning valuation, we must remand for proper consideration of the effect of that testimony.

{¶ 4} As for the departure of tenants, the BTA correctly found that vacancies that occurred after the transfer did not invalidate the allocated sale price as the criterion of value for the property.

{¶ 5} Finally, we hold that if the BTA on remand finds once again that the sale price furnishes the criterion of value in spite of the testimony regarding the seller's motivations, there should be no deduction for the value associated with personal property because the record contains no corroborating evidence for that allocation.

{¶ 6} Based on these holdings, we affirm in part but vacate the decision of the BTA, and we remand for further proceedings.

**Facts**

{¶ 7} For tax year 2006, the auditor valued the four parcels that make up the subject property, which is land improved with warehouse buildings, at $3,713,500. On March 29, 2007, the school board filed a valuation complaint that asserted that the recent sale price of $4,698,700 (or $4,835,000, without the separate allocation to personal property) was the true value of the property.

{¶ 8} The BOR held a hearing on August 28, 2007. The school board cited the March 2006 sale as the basis for valuing the property. In defense, the owner presented the testimony of Fred Scalese, a corporate vice president associated with the owner. [1]

_____

1. The school board contends that the court should not consider the audio tape of the BOR hearing because the property owner, as appellant before the court, failed to have a written transcription of the

**{¶ 9}** Scalese identified the purchase and sale agreement, which covered two properties including the property at issue and which set forth an aggregate sale price of $7,400,000 with no allocation between the two properties. The sale contract explicitly provided for the transfer of personal property along with real property, but does not set forth an allocation of price between these different assets.

**{¶ 10}** Scalese also identified amendments to the sale agreement dated March 2006 that reduced the aggregate sale price by a total of $65,000. In particular, the purchase price was reduced $50,000 in relation to the lease by an important tenant of the subject property. Scalese testified that due diligence had revealed drastic limitations to the personal guarantee for lease payments for that tenant, which led to the grant of a $50,000 concession in sale price.

**{¶ 11}** A settlement statement indicated the allocated price of $4,835,000 for the property at issue, along with the conveyance-fee statement showing an allocated sale price of $4,835,000 for the property at issue with $136,300 further allocated to personal property.

**{¶ 12}** Scalese then identified rent rolls showing tenancy on the property at issue as of January 2006 and then as of January 2007. The rent rolls documented significant revenue loss by virtue of the departure of two important tenants. Scalese pointed out that the rent rolls documented the departure of both of these tenants during 2006; their departure reflected about a $1,000,000 decline in value if the revenue loss were capitalized at 9 percent. Alexander Road did succeed in replacing one of the two departing tenants, but the space was leased at a considerably lower rent.

**{¶ 13}** Scalese testified that the seller allocated the sale price between the two properties and stated that the allocation reflected the seller's "own internal needs to have you know their tax issues handled in such a way that they wouldn't pay

BOR hearing prepared pursuant to S.Ct.Prac.R. 5.4(B). The school board is mistaken; S.Ct.Prac.R. 5.4(B) imposes the requirement of a written transcription for a *BTA* hearing, not a BOR hearing. There was no BTA hearing in this case. Since there is no rule violation, there is no basis for sanctioning appellant by excluding its evidence.

capital gains tax until they did whatever they needed to do with their 1031."[2] Scalese also stated that the seller had acquired the two properties "as part of a multiple site acquisition." Scalese said that Alexander Road acquiesced in the allocation "as we had no choice."

{¶ 14} Scalese offered his opinion that the allocation did not reflect the relative value of the two properties. He pointed to the general difficulty in leasing such space but did not address the specific relative characteristics of the two properties that were bundled for sale in this case. Scalese testified that no appraisals were performed in connection with the purchase.

{¶ 15} Finally, Scalese testified that a personal property tax return had been filed that would document the propriety of allocating sale price to personal property. But in spite of counsel's statement that the personal property tax return would be submitted, the return is not in the record.

{¶ 16} The BOR retained the auditor's valuation, and the school board appealed. At the BTA, the parties waived hearing and the school board filed a brief advocating adoption of the sale price as the value of the property. On January 26, 2010, the BTA issued its decision, holding that the owner had not rebutted the presumptive propriety of using the allocated sale price as set forth on the conveyance-fee statement to value the property.

**Analysis**

{¶ 17} Because the true value of property is a "question of fact, the determination of which is primarily within the province of the taxing authorities," we have held that we will "not disturb a decision of the Board of Tax Appeals with respect to such valuation unless it affirmatively appears from the record that such decision is unreasonable or unlawful." *Cuyahoga Cty. Bd. of Revision v. Fodor*, 15 Ohio St.2d 52, 239 N.E.2d 25 (1968), syllabus. Moreover, as the finder of fact, "the

---

2. By his reference to "1031," Scalese is no doubt referring to Section 1031 of the Internal Revenue Code (26 U.S.C. 1031), which provides for nonrecognition and tax deferral of gain or loss that is realized from the exchange of qualified business or investment property for like-kind property.

BTA has wide discretion in granting weight to evidence and credibility to witnesses," with the result that we will not reverse the BTA's determination of evidentiary weight and credibility "unless we find an abuse of this discretion." *Natl. Church Residence v. Licking Cty. Bd. of Revision*, 73 Ohio St.3d 397, 398, 653 N.E.2d 240 (1995).

{¶ 18} On the other hand, although the BTA is responsible for determining factual issues, we " 'will not hesitate to reverse a BTA decision that is based on an incorrect legal conclusion.' " *Satullo v. Wilkins*, 111 Ohio St.3d 399, 2006-Ohio-5856, 856 N.E.2d 954, ¶ 14, quoting *Gahanna-Jefferson Local School Dist. Bd. of Edn. v. Zaino*, 93 Ohio St.3d 231, 232, 754 N.E.2d 789 (2001). In particular, we have recognized that the BTA "has the duty to state what evidence it considered relevant in reaching its determination," and we thereby require that the BTA evaluate the evidence before it in making its findings. *HealthSouth Corp. v. Levin*, 121 Ohio St.3d 282, 2009-Ohio-584, 903 N.E.2d 1179, ¶ 34, 36.

**The BTA erred by failing to weigh the probative force of the witness's testimony regarding the seller's motivation in allocating the sale price**

*1. The owner has the burden to (i) rebut the allocation* to
*real property on the conveyance-fee statement and (ii)*
*support any deduction* from *real property*

{¶ 19} Our cases establish that "the best evidence of 'true value in money' is the proper allocation of the lump-sum purchase price and not an appraisal ignoring the contemporaneous sale." *Conalco, Inc. v. Monroe Cty. Bd. of Revision*, 50 Ohio St.2d 129, 363 N.E.2d 722 (1977), paragraph two of the syllabus. But the validity of using the allocated sale price depends upon the propriety of the allocation; if the BTA finds that an allocation is not proper, or that a proper one is not possible based on the evidence before it, then the sale price is not determinative of value. *Consol. Aluminum Corp. v. Monroe Cty. Bd. of Revision*, 66 Ohio St.2d 410, 414, 423 N.E.2d 75 (1981); *compare W.S. Tyler Co. v. Lake Cty. Bd. of Revision*, 57 Ohio St.3d 47, 49, 565 N.E.2d 826 (1991) (use of allocated sale price to value real property was

affirmed where "no facts" before the BTA indicated an "improper" allocation that would "distort the true value of the subject property"). Similar principles apply to the personal property tax. *Compare Tele-Media Co. of Addil v. Lindley*, 70 Ohio St.2d 284, 436 N.E.2d 1362 (1982) (an allocation of a lump-sum price for the purchase of business assets that was based on replacement cost and that comported with accounting principles established the value of the property) *with Heimerl v. Lindley*, 63 Ohio St.2d 309, 408 N.E.2d 685 (1980) (an allocation of asset purchase price performed for the sole purpose of reducing the parties' federal income tax liabilities was not probative of value).

{¶ 20} The crucial issue that arises in proposing the use of an *allocated* sale price is the propriety of the allocation for tax-valuation purposes. As a general matter, we have held that "the proponent of an allocation of sale price bears an initial burden of showing the propriety of the allocation," a burden that consists of showing "corroborating indicia to ensure that the allocation reflects the true value of the property." *St. Bernard Self-Storage, L.L.C. v. Hamilton Cty. Bd. of Revision*, 115 Ohio St.3d 365, 2007-Ohio-5249, 875 N.E.2d 85, ¶ 14, 17. At first blush, this doctrine would suggest that the school board should shoulder the burden of proving the propriety of using the allocated sale price.

{¶ 21} When, however, a school board advocates the use of the amount of sale price allocated to a particular parcel on a conveyance-fee statement, the burden of rebuttal rests on the owner because the owner is the party most likely to possess the information that could justify or refute the propriety of the allocation. *FirstCal Indus. 2 Acquisitions, L.L.C. v. Franklin Cty. Bd. of Revision*, 125 Ohio St.3d 485, 2010-Ohio-1921, 929 N.E.2d 426, ¶ 21, 24, 25, 27-29. Thus, in *FirstCal,* we recognized that because it is the owner itself (or an entity in privity with the owner) who has actually reported the allocated sale price on the conveyance-fee statement, the owner should be initially bound by what it has reported. *Id.*

{¶ 22} Applied to the present case, these principles reveal at the outset a twofold burden of proof that falls on Alexander Road as owner. First, Alexander

Road must shoulder the burden to show that the $4,835,000 reported as total consideration on the conveyance-fee statement is an allocation that is not indicative of true value. Second, as the proponent of allocating $136,300 to personal property, Alexander Road must point to corroborating evidence to support the allocation. *Hilliard City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 128 Ohio St.3d 565, 2011-Ohio-2258, 949 N.E.2d 1, ¶ 18 ("the burden of showing the propriety of" the allocation rests on "an owner who seeks an allocation of the sale price in order to reduce the valuation below the full sale price").

*2. The BTA failed to consider the effect of Scalese's testimony*
*regarding the motivations behind the allocation*

{¶ 23} In the present case, the BTA found that the "property owner has not presented evidence which calls into question the allocation made, except for the statement of its representative that the allocation was made at the behest of the seller." *Bedford Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision*, BTA No. 2007-M-1059, 2010 WL 333044, *3. Alexander Road contests the BTA's finding in this regard in two distinct respects.

{¶ 24} First, Alexander Road asserts that the allocation does not reflect true value because "it was not negotiated between the parties, [and] it was not determined at arm's length." It is true that we have upheld the use of an allocated sale price in part because the allocation "was based on negotiations between the parties." *W.S. Tyler Co.*, 57 Ohio St.3d at 49, 565 N.E.2d 826. But just as the parties to a sale of real property can allocate for purposes that genuinely relate to the true value of the properties, they can also allocate for other purposes that may "distort the true value of the subject property" in a given case. *Id.*

{¶ 25} Tax considerations, for example, can affect an allocation in ways that make it unreflective of the value of the individual properties. In an extreme case, the parties to a sale of multiple parcels of real property might allocate for the specific purpose of reducing real property taxes: most of the sale price might be allocated to the parcel that was located in a taxing district with a lower millage. Other tax

considerations have been recognized as significant in this regard, as we have acknowledged in the context of both real and personal property taxation. *See Dublin City School Dist. Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 80 Ohio St.3d 450, 451, 453-454, 687 N.E.2d 422 (1997) (use of allocated sale price to value property was rejected when testimony by a witness with personal knowledge of the sale indicated that the amount allocated to the property at issue had been artificially inflated for negotiation and tax-avoidance purposes); *Heimerl*, 63 Ohio St.2d at 309-310, 408 N.E.2d 685 (allocation of asset purchase price performed "for the sole purpose of reducing the parties' federal income tax liabilities" is an allocation that is not probative of value, because it is "not intended to reflect the true value of the equipment component of the business").

{¶ 26} We are therefore unpersuaded by Alexander Road's insistence that it was forced to accept the seller's allocation. It is elemental that the negotiation at arm's length of *the overall sale price* is material to establishing the sale price as the criterion of value. As part of that basic principle, the negotiation of an allocation *may or may not* reflect the parties' determination of the relative value of different properties included in the same sale, depending on the specific motivations behind the allocation. Accordingly, the negotiation of the allocation itself is neither a necessary nor a sufficient condition for concluding that the allocation reflects the value of the constituent properties.

{¶ 27} This brings us to Alexander Road's second assertion, which is a very different matter. Alexander Road points to the testimony of Scalese, who asserted not only that the seller's allocation was forced upon the buyer, but also testified that the seller's allocation was driven by the seller's desire to avoid tax on capital gains.

{¶ 28} It is not difficult to envision how tax motives might make an allocation unreflective of relative market value. As an example, a taxpayer could have an incentive to allocate more of the sale price to parcel A than parcel B in order to reduce the amount of gain realized and recognized with respect to the sale of parcel B. And, as already discussed, the presence of such tax motivations has been

held to bar the use of an allocated sale price in a proper case. *Heimerl*, 63 Ohio St.2d at 312-313, 408 N.E.2d 685.

{¶ 29} By blatantly ignoring this testimony, the BTA failed to consider whether it is sufficient to negate the validity of using the allocated sale price. When the BTA's decision is "silent on the subject" of potentially material evidence, that silence makes the court " 'unable to perform its appellate duty,' " with the result that the proper course is to remand so that the BTA may afford the taxpayer the review of the evidence that is its due. *Dublin Senior Community L.P. v. Franklin Cty. Bd. of Revision*, 80 Ohio St.3d 455, 462, 687 N.E.2d 426 (1997), quoting *Howard v. Cuyahoga Cty. Bd. of Revision*, 37 Ohio St.3d 195, 197, 524 N.E.2d 887 (1988).

{¶ 30} The school board defends the BTA's decision by citing our *FirstCal* decision, which was issued after the BTA's decision in this case. *FirstCal*, 125 Ohio St.3d 485, 2010-Ohio-1921, 929 N.E.2d 426. We find that *FirstCal* does not directly control the present case because the type of testimony presented in this case had no counterpart in *FirstCal*.

{¶ 31} In *FirstCal*, multiple properties in various counties of Ohio and in other states were sold for a single sale price. *Id*. at ¶ 6-7. First the board of revision and then the BTA assigned a portion of the sale price as the value of the parcels located in Franklin County by (1) accepting the sale price reported on the conveyance-fee statement as the aggregate value of all the Franklin County properties and then (2) allocating the value to each parcel in the county using the ratio of individual-parcel value to aggregate value in accordance with the auditor's original assessments. *Id*. at ¶ 31.

{¶ 32} In *FirstCal*, the owner's witness did not address whether the allocation was indicative of true value. *Id.* at ¶ 9. Moreover, the owner's objection centered on the absence of more specific evidence that the allocation reflected true value. We rejected that contention, holding that under the circumstances, the owner had the burden to show the impropriety of the allocation for tax-valuation purposes. *Id*. at ¶ 28-29, 31.

{¶ 33} While *FirstCal* does articulate the starting point for the present case, it does not furnish guidance for evaluating the testimony offered by Scalese at the BOR hearing. In this case, as in *FirstCal*, it is the burden of Alexander Road as owner to present evidence negating the validity of using the allocated sale price. But the *FirstCal* court simply did not confront a situation where a witness with some involvement in the transaction ascribed tax motives to the allocation. The latter circumstance necessitates the remand in the present case.

{¶ 34} We emphasize that we do not prejudge the disposition of the issue on remand. The BTA will need to weigh the reliability and probative force of Scalese's testimony by determining, among other things, the adequacy of the foundation for Scalese's statement about the seller's motives and whether Scalese stated with sufficient particularity a ground for declining to use the allocated sale price. We hold only that the BTA has a duty to make these determinations within the exercise of its discretion as the finder of fact; we do not prescribe the outcome of the board's deliberations.

*3. Alexander Road presented no evidence corroborating*
*the allocation to personal property*

{¶ 35} On its face, the conveyance-fee statement allocated $136,300 of the $4,835,000 consideration to "items other than real property," which according to Alexander Road refers to the personal property that was transferred along with the warehouse space. Alexander Road points out that the Purchase and Sale Agreement expressly includes tangible personal property "located on or about the Land and the Improvements" as part of the sale. Although Alexander Road seeks to avoid the use of the March 2006 sale price altogether, it argues in the alternative that the sale-price valuation of the realty should be $4,698,700 rather than $4,835,000—i.e., the amount of $136,300 allocated to personal property should be deducted. We disagree.

{¶ 36} As an owner who "seeks an allocation of the sale price in order to reduce the valuation below the full sale price," Alexander Road "bears the burden of showing the propriety of allocating some portion of that reported price to other

assets." *Hilliard City Schools Bd. of Edn.*, 128 Ohio St.3d 565, 2011-Ohio-2258, 949 N.E.2d 1, ¶ 18. We have clarified that this burden is not a heavy one, as our discussion in *St. Bernard Self-Storage*, 115 Ohio St.3d 365, 2007-Ohio-5249, 875 N.E.2d 85, ¶ 14, 17, suggests: all that is required is some additional increment of corroborating evidence beyond the bare fact of allocation in the conveyance-fee statement itself. Indeed, in *Hilliard City Schools Bd. of Edn.*, we held that an allocation of $280,000 to personal property was justified on the basis of a written appraisal report prepared for a lender in conjunction with the asset sale, and we did so in spite of the absence of testimony by the appraiser. *Id*. at ¶ 26-28. In this case, Scalese referred to the personal property tax return and counsel made a commitment to submit it, but the return was apparently never produced.

{¶ 37} Because the record is devoid of any corroborating evidence in support of the allocation of $136,300 to personal property, the BTA should (if the allocated sale price is used) disallow the deduction of $136,300 from the $4,835,000 sale price.

## The departure of key tenants does not, without more, impugn the propriety of the allocated sale price

{¶ 38} Alexander Road contends that the default and departure of a key tenant, Window & Door Factory (and to a lesser extent the departure of the Tasty Baking tenant), constitute reasons to disregard the allocated sale price. We hold that the evidence of tenant loss that Alexander Road presented falls short of proving the impropriety of the allocated sale price.

{¶ 39} Under the case law, the opponent of the allocated sale price has the burden of doing one of three things. First, it could under general principles show that the entire transaction is not recent or at arm's length or that by the nature of the particular transaction the sale price does not involve an aggregation of market prices of the constituent properties. *Compare Pingue v. Franklin Cty. Bd. of Revision*, 87 Ohio St.3d 62, 64, 717 N.E.2d 293 (1999) ("It is only when the purchase price [of multiple parcels] does not reflect true value that a review of independent appraisals

based upon other factors is appropriate"); *see, e.g., Tanson Holdings, Inc. v. Darke Cty Bd. of Revision*, 74 Ohio St.3d 687, 660 N.E.2d 1216 (1996) (sale not at arm's length). Second, the opponent of the allocated sale price can show that "no readily and reasonably identifiable purchase price paid for [an individual property]" can be ascertained through allocation of the larger lump-sum price. *See Consol. Aluminum Corp.*, 66 Ohio St.2d at 415, 423 N.E.2d 75. This category would encompass the situation where the motivations for an actual allocation—such as tax incentives— impugn the propriety of using that allocation for tax valuation, and no alternative method of allocation is proven to be accurate. *See Dublin City School Dist. Bd. of Edn.*, 80 Ohio St.3d at 451, 453-454, 687 N.E.2d 422. Third, the opponent of a proffered allocation of sale price could in theory prove that a different allocation of that sale price would better reflect the market value of the individual properties.

{¶ 40} Alexander Road's tenant-loss evidence accomplishes none of these objectives. The taxpayer contests neither the arm's-length character of the overall sale nor its recency,[3] nor does it propose to prove that the aggregate sale price did not constitute the aggregate value of the two properties. Additionally, Alexander Road's evidence by itself does not tend to show an improper allocation; notably absent is any evidence regarding the value of the other property sold through the transaction, with the result that the tenant loss on the subject property cannot call into question the relative valuation of the properties in terms of the aggregate sale price. Finally, the BTA correctly noted that the taxpayer received a $50,000 concession in sale price because of the situation of a key tenant, thereby tending to negate its contention that its payment of the allocated sale price constituted an overpayment.

---

3. We have noted that an arm's-length sale for tax-valuation purposes presupposes reasonably knowledgeable buyers and sellers. *See Worthington City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 129 Ohio St.3d 3, 2011-Ohio-2316, 949 N.E.2d 986, ¶ 22, fn. 2. Because Alexander Road does not contest the arm's-length character of the sale, its tenant-loss evidence will not be considered in support of an argument that the buyer lacked knowledge. *Id*. Nor does the tenant loss document any problem with the recency of the sale, since it apparently occurred after both the lien date and the sale, and recency is affected by events that occur *between* the lien date and the sale. *See Olentangy Local Schools Bd. of Edn. v. Delaware Cty. Bd. of Revision*, 125 Ohio St.3d 103, 2010-Ohio-1040, 926 N.E.2d 302, ¶ 12.

**Conclusion**

**{¶ 41}** The BTA acted reasonably and lawfully by (1) finding that the taxpayer presented no corroborating evidence in support of an allocation of sale price to personal property and (2) rejecting the taxpayer's tenant-loss evidence as a basis for relief. But the BTA erred by failing to determine the reliability and probative value of the testimony regarding the tax motivations of the seller in allocating the sale price. We therefore vacate the BTA's decision and remand so that the BTA may consider the foundational adequacy and probative value of that testimony and determine its effect on the propriety of the allocation for purposes of valuing the property.

Judgment accordingly.

O'CONNOR, C.J., and LUNDBERG STRATTON, O'DONNELL, LANZINGER, CUPP, and MCGEE BROWN, JJ., concur.

PFEIFER, J., concurs in judgment only.

_____

Kolick & Kondzer, Thomas A. Kondzer, John P. Desimone, and Michelle A. Yanok, for appellee Bedford Board of Education.

Sleggs, Danzinger & Gill Co., L.P.A., and Todd W. Sleggs, for appellant.

_____