[Cite as *Columbus City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 2022-Ohio-4100.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Columbus City Schools Board of Education et al., | : | |
| | : | |
| Appellants-Appellees, | : | |
| | : | No. 22AP-33 |
| v. | | (B.T.A. No. 2019-72) |
| | : | |
| Franklin County Board of Revision et al., | | (REGULAR CALENDAR) |
| | : | |
| Appellees-Appellees, | : | |
| | | |
| CCA Development, LLC, | : | |
| | : | |
| Appellee-Appellant. | : | |

D E C I S I O N

Rendered on November 17, 2022

**On brief:** *Rich & Gillis Law Group, LLC*, *Mark H. Gillis*, and *Kelley A. Gorry*, for appellee Columbus City School District Board of Education. **Argued:** *Kelley A. Gorry*.

**On brief:** *Plank Law Firm, LPA,* and *David Watkins,* for appellant CCA Development, LLC. **Argued:** *David Watkins.*

APPEAL from the Ohio Board of Tax Appeals

DORRIAN, J.

{¶ 1} Appellant, CCA Development, LLC ("CCA"), appeals from a decision and order ("decision") of the Ohio Board of Tax Appeals ("BTA") regarding the value of six properties in Franklin County owned by CCA for tax years 2017 and 2018. For the following reasons, we affirm.

## I. Facts and Procedural History

{¶ 2} On March 18, 2018, appellee, the Columbus City Schools Board of Education ("BOE"), filed a complaint before the Franklin County Board of Revision ("BOR") seeking increases for tax years 2017 and 2018 on the value of six properties owned by CCA in Franklin County on grounds that the properties were sold in an arm's-length transaction on March 6, 2015 for $1,850,000. The principal use of the properties was alleged to be parking garage, structures, and lots. On May 25, 2018, CCA filed a countercomplaint objecting to the increases being sought. The properties were listed by the BOE as follows: 010-009459-00 address 135 West Spruce Street; 010-010155-00 address 135 West Spruce Street; 010-039814-00 address 135 West Spruce Street; 010-066960-00 address West Spruce Street; 010-255957-00 address Jetway Boulevard; and 010-270790-00 address West Spruce Street. The five properties located on West Spruce Street are collectively referred to as the Arena District properties. The property located on Jetway Boulevard is referred to as the Jetway property. A seventh property, referred to as the Masonry property, (010-255956-00), located adjacent to the Jetway property, was also sold in the same arm's-length transaction. However, the Masonry property was not included in the complaint or countercomplaint before the BOR. The BOE's opinion of true value as listed in the original complaint, CCA's opinion of true value as listed in the original countercomplaint, and the Franklin County Auditor's assessment of true value[1] while the complaint and countercomplaint were pending were as follows:

---

[1] Article XII, Section 2 of the Ohio Constitution provides that "[l]and and improvements thereon shall be taxed by uniform rule according to value." County auditors are required to appraise real property "at its true value in money." R.C. 5713.01(B). R.C. 5713.03 governs the determination of the true value of real property. *Gallick v. Franklin Cty. Bd. of Revision*, 10th Dist. No. 15AP-182, 2018-Ohio-818, ¶ 26. " '[T]he value or true value in money of real property' refers to 'the amount for which that property would sell on the open market by a willing seller to a willing buyer * * *, *i.e.*, the sales price.' " *Terraza 8, L.L.C. v. Franklin Cty. Bd. of Revision*, 150 Ohio St.3d 527, 2017-Ohio-4415, ¶ 9, quoting *State ex rel. Park Invest. Co. v. Bd. of Tax Appeals*, 175 Ohio St. 410, 412 (1964). Generally, Ohio determines real property's true value "by determining, as a first step, the property's fair market value at its highest and best use." *Johnson v. McClain*, 164 Ohio St.3d 379, 2021-Ohio-1664, ¶ 7.

R.C. 5713.03 states in relevant part: "In determining the true value of any tract, lot, or parcel of real estate under this section, if such tract, lot, or parcel has been the subject of an arm's length sale between a willing seller and a willing buyer within a reasonable length of time, either before or after the tax lien date, the auditor may consider the sale price of such tract, lot, or parcel to be the true value for taxation purposes."

| Parcel Number and Address | Opinion of True Value per BOE | True Value per Auditor[2] when complaint and countercomplaint were pending as of Sept. 13, 2018 | Opinion of True Value per CCA |
|---|---|---|---|
| 010-009459-00 135 W. Spruce St. | 215,600 | 44,300[3] | 125,200 |
| 010-010155-00 135 W. Spruce St. | 110,200 | 64,000 | 64,000 |
| 010-039814-00 135 W. Spruce St. | 71,800 | 41,800 | 41,800 |
| 010-066960-00 W. Spruce St. | 89,600 | 52,100 | 52,100 |
| 010-255957-00 Jetway Blvd. | 1,343,000 | 780,000 | 780,000 |
| 010-270790-00 W. Spruce St. | 19,800 | 11,200 | 11,200 |
| Totals | 1,850,000 | 1,074,300 | 1,074,300 |

(BOE Compl. at 2-4.)

{¶ 3} The BOR held a hearing on October 3, 2018 then continued until December 11, 2018. At the hearing, the BOE presented the March 4, 2015 Real Property Conveyance Fee Statement of Value and Receipt reflecting a total sale price of $1,850,000 for all six properties and the March 6, 2015 General Warranty Deed reflecting the transfer of the six properties from Midwest Investment Group, LLC to CCA.

{¶ 4} At the BOR hearing, CCA presented the testimony of Samuel D. Koon, a real estate appraiser,[4] as well as Koon's written appraisal dated November 21, 2018. The

[2] In the record, there is a BOR decision dated July 11, 2016 which indicates that based on evidence the BOR received at the hearing on June 28, 2016 it determined the market values of the properties for tax years beginning 2015 were as follows: 010-009459-00 $211,000; 010-010155-00 $771,500; 010-039814-00 $41,800; 010-066960-00 $120,200; 010-255957-00 $780,000; 010-270790-00 $25,800.

[3] At some point, the true value of parcel 010-009459-00 was listed as $125,200. However, in the record there is a Corrected Letter from the BOR which indicates 010-009459-00 as of January 1, 2018 has "no value change" and is $44,300. (Emphasis omitted.) (Dec. 14, 2018 Corrected Letter.)

[4] Upon appeal of a decision of a BOR to the BTA, R.C. 5717.01 requires the BOR to "certify to the [BTA] a transcript of the record of the proceedings of the county [BOR] pertaining to the original complaint, and all evidence offered in connection therewith." In the case before us, there was no objection or allegation before the BTA that the BOR did not comply with R.C. 5717.01. Upon appeal of a decision of the BTA to a court of appeals, R.C. 5717.04 requires the BTA "upon written demand filed by an appellant * * * [to] file with the court to which the appeal is being taken a certified transcript of the record of the proceedings of the [BTA] pertaining to the decision complained of and the evidence considered by the [BTA] in making such decision." Although, in the case before us, there is no objection or allegation that the BTA did not comply with R.C. 5717.04, we sua sponte observe that the record certified to us from the BTA contains an audio recording of the BOR hearing—which includes Koon's oral testimony—but no written transcript of the BOR hearing. At oral argument, upon inquiry of the court, CCA's counsel indicated he did not intend to provide the court with a written transcript.

appraisal indicates Koon visited the site on November 10, 2017. He applied a sales comparison approach to value because the land was vacant, unimproved, and not an income-producing property. In applying the sales comparison approach, Koon looked at six based parcels which he determined to be comparable, some of which were recently sold but others were just listed. Koon also looked at a listing for the sale of the Jetway and Masonry properties which were being offered for sale together. He did not take into

---

App.R. 9(B) states in relevant part:

> [1] (1) * * * it is the obligation of the appellant to ensure that the proceedings the appellant considers necessary for inclusion in the record, *however those proceedings were recorded, are transcribed* in a form that meets the specifications of App.R. 9(B)(6)[;] * * * [2] (3) [t]he appellant shall order the transcript *in writing* and shall file a copy of the transcript order with the clerk of the trial court[;] * * * [and 3] (6) [a] transcript of proceedings under this rule shall be in the [form outlined below].

(Emphasis added.) It is not clear, however, that App.R. 9 applies to appeals to courts of appeals from the BTA as App.R. 1(B) states that "[p]rocedure in appeals to courts of appeals from the [BTA] shall be as provided by law, except that App.R. 13 to 33 shall be applicable to those appeals." Notwithstanding the lack of reference to App.R. 9 in App.R. 1(B), as noted in *Yim v. Cuyahoga Cty. Bd. of Revision*, 8th Dist. No. 109470, 2020-Ohio-6742, the Eighth District Court of Appeals has applied App.R. 9 in appeals to the Eighth District from the BTA. *Yim* held "[w]e first observe that the statutory transcript before the BTA includes an audio disc of the hearing before the BOR. App.R. 9(B)(1) and (6) require the BOR hearing audios to be transcribed, but appellants did not have the recording transcribed to be included as part of the record on appeal. *See Schwartz v. Cuyahoga Cty. Bd. of Revision*, 8th Dist. Cuyahoga No. 106659, 2018-Ohio-4712, ¶ 38, fn. 3. As a result, we rely on the BTA's account of what transpired at the BOR hearing in its decision." *Id.* at ¶ 4. We are inclined as well to apply the requirements of App.R. 9(B)(1), (3) and (6) in appeals to the Tenth District from the BTA and not to consider the audio transcript of the BOR hearing. Nevertheless, even if we did not apply App.R. 9, we still would not consider the audio transcript of the BOR hearing because CCA and the BOE did not comply with App.R. 16(A)(3) which requires that briefs include "[a] statement of the assignments of error presented for review, *with reference to the place in the record where each error is reflected*." (Emphasis added.) At page eight of its merit brief, CCA cites to the hour-minute location in the audio recording where the BOE's presentation of evidence began and where Koon's testimony began, but CCA's brief and reply brief contain no specific references to support either first-hand knowledge of the March 2015 sale of the properties, some involvement in the transaction, or an explanation of who the owner's representative was with whom Koon consulted and the extent of first-hand knowledge or involvement the representative had in the March 2015 sale, and more specifically in the allocation of $90,000 to the Jetway property. CCA does not point to any reference in the audio recording of how Koon "reportedly" became aware that the sale allocation did not reflect the true value. In its merit brief, the BOE merely states "[s]ee BOR Hearing Record." (BOE's Brief at 5.) It is clear that App.R. 16 applies to appeals to courts of appeals from the BTA. *See* App.R. 1(B) *infra*. Furthermore, "[t]he burden of affirmatively demonstrating error on appeal rests with the [appellant]." (Quotations and citations omitted.) *Groveport Madison Local Schs. Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 10th Dist. No. 17AP-693, 2018-Ohio-4620, ¶ 24. "It is not the duty of this court to search the record for evidence to support an appellant's argument as to alleged error." (Quotations and citation omitted.) *Id.* For these reasons, we will not consider the audio transcript of the BOR hearing.

consideration the March 2015 sale of the Arena District and Jetway properties because based on information he reportedly received from an owners representative, he did not consider it to be pertinent to the analysis. Ultimately, Koon opined the market value of the Jetway property as of January 1, 2017 was $275,000 (5 acres at $55,000 per acre).

{¶ 5}  At the BOR hearing, CCA amended its countercomplaint and withdrew its objections to the BOE's valuation of all the Arena District properties but not the Jetway property.  CCA also amended its opinion of true value for the Jetway property from $780,000 to $275,000.

{¶ 6}  The BOR rendered a decision on December 13, 2018 based on evidence it received at hearing on December 11, 2018 and determined that the new market values of the properties for tax years 2017 and 2018 were as follows:

- 010-009459-00 BOR increased value from $125,200 to $215,600
- 010-010155-00 BOR increased value from $64,000 to $110,200
- 010-039814-00 BOR kept value remaining at $71,800
- 010-066960-00 BOR increased value from $52,100 to $89,600
- 010-255957-00 BOR decreased value from $780,000 to $275,000
- 010-270790-00 BOR increased value from $11,200 to $19,800

{¶ 7}  The BOE appealed to the BTA the BOR's valuation and listed on its notice of appeal the Arena District properties and the Jetway property and opined that the value of the properties should be as follows:

- 010-009459-00 $215,600 (same as BOR valuation)
- 010-010155-00 $110,200 (same as BOR valuation)
- 010-039814-00 $71,800 (same as BOR valuation)
- 010-066960-00 $89,600 (same as BOR valuation)
- 010-255957-00 $1,343,000 (higher than BOR valuation)
- 010-270790-00 $19,800 (same as BOR valuation)

{¶ 8}  The BOE indicated it would support its opinion of market value with the statutory transcript from the BOR and that "[a]dditional evidence may be submitted at the hearing." (BTA Jan. 11, 2019 Notice of Appeal to BTA.)  The BTA set the case for hearing on August 6, 2019.

{¶ 9}   The BTA set June 10, 2019 as the cutoff date for witness list and evidence. CCA disclosed evidence as found in the statutory transcript and potential witnesses as Koon, Aaron J. Duffy, and Patrick Emery from Samuel D. Koon & Associates.  The BOE, however, filed its exhibits on August 5, 2019 at 3:00 p.m., less than 24 hours prior to the hearing.  The BOE disclosed as evidence: (1) a chart titled "actual sale allocation,"[5] (2) real estate purchase contract, (3) settlement statement of the sale of the 7 properties dated March 3, 2015, and (4) auditor's print out for the Masonry property, parcel 010-255957-00.  Ultimately, over the objection of CCA, the real estate purchase contract and the settlement statement were admitted into evidence by the BTA.  CCA did not present Koon, Duffy, Emery, or any other witness at the hearing.

{¶ 10} Relevant here, Article I of the real estate purchase contract listed the purchase price for all seven properties, the Arena District, Jetway and Masonry properties, as $2,450,000.  Article I indicated:

> The Purchase Price shall be allocated as follows (i) $1,760,000.00 for the 039814 Property, 010155 Property, 066960 Property, 135 Spruce Property [010-009459-00] and 270790 property and (ii) $690,000.00 for the 255957 Property and Masonry Property, of which $90,000.00 shall be allocated to the 255957 property and $600,000.00 shall be allocated to the Masonry property.

{¶ 11} Attorney Examiner Temeka Higgins ("AE") conducted the hearing for the BTA.  At the outset of the hearing, CCA's counsel objected to the admission of the BOE's exhibits as they were: (1) untimely, (2) not authenticated, although provided by CCA to BOE pursuant to a discovery request, and (3) hearsay.  BOE's counsel responded that although it was not an excuse, she was not able to keep up with her workload and she looked at the file for this case for the first time the day prior to the hearing.  Notwithstanding, BOE's counsel argued there was no prejudice to CCA from the late disclosure as the purchase contract and the settlement statement had been provided to the BOE from CCA pursuant to discovery.

---

[5] The chart titled "actual sale allocation" has five columns: parcel no., contractual allocation, original value, *FirstCal* percentage, and allocation. This document is not signed or certified and was prepared by BOE's counsel pursuant to her calculations according to *FirstCal Indus. 2 Acquisitions, L.L.C. v. Franklin Cty. Bd. of Revision*, 125 Ohio St.3d 485, 2010-Ohio-1921.

{¶ 12} Pursuant to what was reflected in the purchase contract and the settlement statement, the BOE argued that the BTA should allocate $1,760,000 to the Arena District properties, $90,000 to the Jetway property, and $600,000 to the Masonry property. The BOE then argued the $1,760,000 total for the Arena District properties should be allocated pursuant to *FirstCal Indus. 2 Acquisitions, L.L.C. v. Franklin Cty. Bd. of Revision*, 125 Ohio St.3d 485, 2010-Ohio-1921,[6] and indicated the BOE's *FirstCal* allocations are reflected in the chart titled "actual sale allocation." Finally, the BOE acknowledged that CCA had presented the Koon appraisal before the BOR and that Koon's opinion of value for the Jetway property was much higher at $275,000. The BOE objected however to the Koon opinion as there was no testimony of a witness with personal knowledge of the sale. The BOE also objected that there had been no other evidence of value presented in the form of an appraisal to rebut the sale price as to the Arena District properties.

{¶ 13} CCA then indicated it would stand on the evidence that was already in the record, including the Koon appraisal. CCA's counsel also renewed his objection to BOE's "evidence submitted or, quote unquote, evidence submitted today as being highly damaging to us and well out of rule." (BTA Proceedings at 7.) The AE then asked CCA's counsel if it was alleging the purchase contract and settlement statement were not what they are purported to be, and CCA's counsel indicated that he was not alleging anything. The AE then deferred ruling on CCA's objection.

{¶ 14} The BTA entered its decision on December 20, 2021. It overruled CCA's objection to the admission of the purchase contract and the settlement statement and accorded little weight to the Koon appraisal.

---

[6] "In *FirstCal*, multiple properties * * * were sold for a single sale price. *Id*. at ¶ 6-7. First the [BOR] and then the BTA assigned a portion of the sale price as the value of the parcels located in Franklin County by (1) accepting the sale price reported on the conveyance-fee statement as the aggregate value of all the Franklin County properties and then (2) allocating the value to each parcel in the county using the ratio of individual-parcel value to aggregate value in accordance with the auditor's original assessments. *Id*. at ¶ 31." *Bedford Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision*, 132 Ohio St.3d 371, 2012-Ohio-2844, ¶ 31.

We note that CCA does not argue the calculations the BTA made pursuant to the *FirstCal* formula are incorrect. Therefore, we will not address the same. CCA does however, argue, in essence, that it was incorrect for the BTA to apply the *FirstCal* formula in the second assignment of error and, in particular, the third assignment of error. We address this argument in our analysis of those assignments of error.

{¶ 15} The BTA accepted the total purchase price of $2,450,000 for the Arena District properties, the Jetway property and Masonry property as evidenced in the purchase contract and settlement statement as well as the allocation of $600,000 of the total purchase price to the Masonry property and $90,000 of the total purchase price to the Jetway property. Accordingly, the BTA concluded the total purchase price for the Arena District properties and the Jetway property was $1,850,000, with $90,000 of that total being allocated to the Jetway property.

{¶ 16} The BTA further allocated the $1,760,000 in accordance with the auditor's initial values pursuant to *FirstCal*. The BTA set the allocation of values as follows:

- 010-009459-00 true value $748,050; taxable value $261,820
- 010-010155-00 true value $383,000; taxable value $134,050
- 010-039814-00 true value $250,150; taxable value $87,550
- 010-066960-00 true value $311,770; taxable value $109,120
- 010-255957-00 true value $90,000; taxable value $31,500
- 010-270790-00 true value $67,030; taxable value $23,460

(BTA Decision at 9-10.) The BTA unanimously adopted the AE report.

{¶ 17} CCA appealed the BTA's decision pursuant to R.C. 5717.04.

## II. Assignments of Error

{¶ 18} CCA sets forth three assignments of error as follows:

[I.] THE OHIO BOARD OF TAX APPEALS ("BTA") ERRED BY ADMITTING EVIDENCE THAT WAS IDENTIFIED BY THE APPELLANT-APPELLEE COLUMBUS CITY SCHOOLS BOARD OF EDUCATION ("BOE"), OUT OF RULE AND ON THE EVE OF THE HEARING.

[II.] THE BTA ERRED BY DETERMINING THE VALUE OF THE FIVE PARCELS THAT WERE NOT DISPUTED BEFORE THE FRANKLIN COUNTY BOARD OF REVISION ("BOR")

[III.] THE BTA ERRED BY NOT GIVING PROPER WEIGHT TO THE APPRAISAL INTRODUCED INTO EVIDENCE BY THE APPELLEE-APPELLANT, CCA DEVELOPMENT, LLC ("CCA") AND ALLOCATING THE VALUES OF THE CCA PROPERTY AS SUGGESTED BY THE BOE.

## III. Analysis

{¶ 19} In the first assignment of error, CCA argues the BTA erred in admitting into evidence the purchase contract and settlement statement because the BOE disclosed it would be admitting the same into evidence less than 24 hours before the scheduled hearing and out of rule. CCA argues the BOE did not show good cause[7] for failure to abide by the timeline and that it was unfair for the BTA to consider the evidence with no notice to CCA. CCA states it had no reason to believe that anyone needed to testify about the itemization of valuations contained in the real estate purchase contract and that it was unfairly taken by surprise by the BTA's allowance of the BOE's last minute evidence. Finally, CCA argues the evidence was unauthenticated hearsay material.

{¶ 20} CCA objected to the admission of this evidence before the hearing and therefore our standard of review is abuse of discretion. *See Gaston v. Medina Cty. Bd. of Revision*, 133 Ohio St.3d 18, 2012-Ohio-3872, ¶ 24.

{¶ 21} The BTA overruled the objection and found the admission of the documents to not be prejudicial. The BTA found as follows:

> Before we consider the merits of this appeal, we must first dispose of preliminary issues. As noted above, the property owner objected to the evidence proffered by the BOE at this Board's hearing. To be sure, the BOE was untimely in

---

[7] In *Gaston v. Medina Cty. Bd. of Revision*, 133 Ohio St.3d 18, 2012-Ohio-3872, the Supreme Court analyzed R.C. 5715.19(G) which states:

"(G) A complainant shall provide to the [BOR] all information or evidence within the complainant's knowledge or possession that affects the real property that is the subject of the complaint. A complainant who fails to provide such information or evidence is precluded from introducing it on appeal to the [BTA] or the court of common pleas, except that the [BTA] or court may admit and consider the evidence if the complainant shows *good cause* for the complainant's failure to provide the information or evidence to the [BOR]."

(Emphasis added.)

CCA does not point us to any specific authority that requires a showing of good cause when the timelines set forth in Ohio Adm.Code 5717-1-07 are not followed. Nevertheless, as noted above, in *Gaston* the Supreme Court pointed to R.C. 5715.19's text requiring a showing of good cause as a prerequisite to admission in the case of non-compliance with R.C. 5715.19. Here, however, the allegation is not that the BOE did not comply with R.C. 5715.19—to the contrary, the BOE was attempting to provide to the BTA all the information or evidence it had within its knowledge or possession that affected the Arena District and Jetway properties—the purchase contract and the settlement statement. Rather, the allegation here is that the BOE did not provide the evidence in a timely manner. Furthermore, the BOE did not have the purchase contract and settlement statement in its possession when it went before the BOR. CCA, however, did have it in its possession at that time, but did not present it to the BOR.

disclosing its exhibits according to the case management schedule. Ohio Adm.Code 5717-1-07(A)(2). Case management schedules exist for a reason and this Board expects all litigants to follow them unless good cause[8] is shown. However, as it relates to Exhibit B, the underlying purchase agreement related to the subject sale, and Exhibit C, the settlement statement related to the subject sale, we cannot say that the property owner was prejudice or harmed by the production of documents it provided during discovery especially when the crux of this matter involves whether the subject sale [is] the best indication of the subject properties' values. *Columbus City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, Slip Opinion No. 2020-Ohio-353. We will, therefore, overrule the property owner's objection as [to] Exhibits B and C, but sustain the property owner's objection as to the remaining proffered exhibits.

(BTA Decision at 3-4.)

{¶ 22} In support of its argument, CCA points to Ohio Adm.Code 5717-1-07 which reads in relevant part:

(A) In appeals proceeding under case management schedules established by this rule, * * * [f]ailure to adhere to established deadlines *may* result in the denial of requests to adjust or amend a case management schedule, the exclusion of written legal argument, *the prohibition against introducing documents and testimony into evidence,* or such other action as deemed appropriate.

* * *

(2) Appeals from decisions of county boards of revision not proceeding on the small claims docket or under paragraph (A)(1) of this rule shall adhere to the following schedule:

* * *

(d) Only if a hearing is scheduled, appellant shall disclose to all other parties the witnesses and evidence upon which the appeal is based not more than one hundred fifty days after the filing of a notice of appeal[.]

(Emphasis added.)

---

[8]*See infra* fn. 4.

{¶ 23} We find, on the facts of this case, that the BTA did not abuse its discretion in admitting the evidence of the purchase contract and the settlement statement. We agree with the BTA that BOE's counsel should have complied with the disclosure deadlines. However, Ohio Adm.Code 5717-1-07 states that non-compliance with established deadlines "may" result in the prohibition against introducing documents into evidence, but it does not require such prohibition. Therefore, the BTA could exercise its discretion in determining whether to exclude or admit the purchase contract and settlement statement. The BTA considered that both documents were relevant to the valuation of the Arena District and Jetway properties and the question before the BTA was whether the 2015 sale was the best indication of the properties' values. The BTA also noted the purchase contract and settlement statement were provided to the BOE by CCA pursuant to discovery related to this case—thus, CCA was clearly on notice that the BOE was interested in the information contained in the purchase contract and settlement statement. Furthermore, although CCA now argues the documents were unauthenticated hearsay, when the AE asked CCA's counsel at the hearing whether he was alleging the same, CCA's counsel responded he was not alleging anything.

{¶ 24} Accordingly, we overrule the first assignment of error.

{¶ 25} In the second assignment of error, CCA avers the BTA erred by determining the values of the Arena District properties which were not disputed before the BOR. In support, CCA argues it had no notice that the valuations of the Arena District properties were at issue because it had amended its countercomplaint to reflect the values set forth in the BOE's complaint. It further argues the parties were in agreement regarding the fair market value of all the parcels and that the BOE waived its right to appeal the BOR's valuations of the Arena District properties. We are not persuaded by CCA's arguments.

{¶ 26} First, we note that the BOE's opinion of the Arena District properties before the BOR and upon its filing of an appeal before the BTA were formed without the benefit of the information contained in the purchase contract—which CCA did not present as evidence before the BOR and which Koon did not consider in his appraisal of the Jetway property. The BOE was only able to obtain a copy of the purchase contract and settlement statement from CCA pursuant to discovery it conducted after it filed an appeal with the BTA.

{¶ 27} Second, we reject CCA's argument that the BOE waived the right to appeal the valuation of the Arena District properties. In support of the waiver argument, CCA cited *Leslie v. Ohio Dept. of Dev.*, 171 Ohio App.3d 55, 2007-Ohio-1170, ¶ 47 (10th Dist.). *Leslie* acknowledged the general principle of waiver that a party has waived on appeal an issue it did not raise before a lower court. *Leslie* observed that such principle has been applied in appeals from administrative agencies as well.

{¶ 28} However, case law specific to appeals to the BTA from a BOR point us to a different conclusion in this case. The Supreme Court of Ohio has held:

> One principle of general importance is that the BTA has the duty, in a real-property-valuation case, to " ' "independently weigh and evaluate all evidence properly before it" ' in arriving at its own decision."
>
> * * *
>
> A special situation is presented when the record as developed "negates the validity of the county's valuation of the property." *Colonial Village* [*Ltd. v. Washington Cty. Bd. of Revision*, 123 Ohio St.3d 268, 2009-Ohio-4975], ¶ 24. In that situation, the BTA acquires "the legal duty * * * to determine whether the record as developed by the parties contain[s] sufficient evidence to permit an independent valuation of the property" by the BTA. *Id.* at ¶ 25. If the record contains such evidence, the BTA should perform an independent valuation. *Id.*
>
> Finally, when performing an independent valuation, the BTA is not bound by the values advocated by the parties—indeed, the statutory language calls for the BTA on appeal from the BOR to "determine the taxable value of the property." R.C. 5717.03(B). The same language in R.C. 5717.05 has been construed by this court, in the context of an appeal from the board of revision to the common pleas court: the taxpayer's valuation complaint "places neither minimum nor maximum limitations on the court's determination of value, and there are none save the judicial requirement that the determination be supported by the evidence."

(Citations omitted.) *Sapina v. Cuyahoga Cty. Bd. of Revision*, 136 Ohio St.3d 188, 2013-Ohio-3028, ¶ 25-28. Furthermore, the Supreme Court has "emphatically held that the BTA's independent duty to weigh evidence precludes a presumption of validity of the BOR's

valuation." *Id.* at ¶ 35, citing *Vandalia-Butler City Schools Bd. of Edn. v. Montgomery Cty. Bd. of Revision*, 130 Ohio St.3d 291, 2011-Ohio-5078, ¶ 13.

{¶ 29} Here, the county auditor's original valuation of the Jetway property of $780,000 and the BOR's valuation of $275,000 was negated by the record presented in the form of the purchase contract, Article I, which allocated a sale price of $90,000 to the Jetway property. The county auditor's original valuation of the Arena District properties of $294,300[9] and the BOR's valuation of $507,000[10] was negated by the record presented in the form of the purchase contract, Article I, which allocated a total sales price of $1,760,000 to the Arena District properties. Furthermore, there was sufficient evidence in the record in the form of the purchase contract and the settlement statement to conduct an independent evaluation. With this evidence, as well as the county auditor's original valuations, the BTA was able to apply the *FirstCal* formula and arrive at an allocation of value of the Arena District properties. Accordingly, we do not find the BTA erred by determining the values of the Arena District properties. Their values necessarily changed as a result of the evidence presented regarding the specific allocation to the Jetway property in the purchase contract, and the BTA did not err in addressing the same.

{¶ 30} Accordingly, we overrule the second assignment of error.

{¶ 31} In the third assignment of error, CCA argues the BTA erred by not giving proper weight to the Koon appraisal and consequently by allocating the values of the properties as suggested by the BOE pursuant to *FirstCal*.

{¶ 32} An appellate court will affirm a BTA decision that is reasonable and lawful. De novo review applies to the BTA's resolution of legal questions, but abuse of discretion review applies to the BTA's determination of the credibility of witnesses and its weighing of the evidence subject only to an abuse-of-discretion review on appeal. *PI in the Sky, L.L.C. v. Testa, Tax Commr.*, 155 Ohio St.3d 113, 2018-Ohio-4812, ¶ 11.

{¶ 33} CCA argues that even when properties are purchased as part of a bulk sale, an agreement by the parties to the sale to allocate certain amounts to individual properties does not by itself establish the propriety of the allocation. Therefore, CCA argues the BTA

---

[9] The sum of $125,200 plus $64,000 plus $41,800 plus $52,100 plus $11,200 equals $294,300. But, s*ee also* fn. 3.
[10] The sum of $215,600 plus $110,200 plus $71,800 plus $89,600 plus $19,800 equals $507,000.

erred in finding the true value of the Jetway property to be $90,000 consistent with the $90,000 price allocated to the Jetway property in the purchase contract.

{¶ 34} Recently, the Supreme Court held in *Arbors E. RE, L.L.C. v. Franklin Cty. Bd. of Revision*,[11] 153 Ohio St.3d 41, 2018-Ohio-1611, ¶ 16, 22-23, as follows:

> When applied to such "bulk sales," the familiar precept that "[t]he best evidence of the 'true value in money' of real property is an actual, recent sale of the property in an arm's-length transaction" has a corollary: the principle that the law favors a "proper allocation of [a] lump-sum purchase price" over "an appraisal ignoring the contemporaneous sale." *Conalco, Inc. v. Monroe Cty. Bd. of Revision*, 50 Ohio St.2d 129, 363 N.E.2d 722 (1977), paragraphs one and two of the syllabus.
>
> * * *
>
> It is true that the case law attaches importance, when allocating the sale price among various bulk-sale assets, to "corroborating indicia" or the "best available evidence" that is associated with matters contemplated by the parties at the time of sale.
>
> On the other hand, we have stated that "negotiation of the allocation itself is neither a necessary nor a sufficient condition for concluding that the allocation reflects the value of the constituent properties." *Bedford Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision*, 132 Ohio St.3d 371, 2012-Ohio-2844, 972 N.E.2d 559, ¶ 26. Most significantly, we recently found an abuse of discretion by the BTA when it failed to consider after-

---

[11] We distinguish *Arbors East* from the case at bar in that *Arbors East* involved the sale of a nursing home which the appraiser determined was a sale of a "going concern" and that the purchase price included not only the sale of realty but also constituted a sale of all the assets of the nursing-home business, including licenses, FF&E and goodwill. The Supreme Court determined first that the BTA erred by holding as a matter of law that any allocation to goodwill is improper. Second, the Supreme Court admonished the BTA for neglecting to exercise its statutory authority to obtain a complete record from the BOR. Finally, while acknowledging that case law attaches importance, when allocating the sale price among various bulk-sale assets, to "corroborating indicia" or the "best available evidence" associated with matters contemplated by the parties at the time of the sale, the Supreme Court determined it was error to not consider an after-the-fact appraisal presented to show the allocation in a purchase contract did not reflect the true value of a property. The court remanded the case with instructions to determine whether there was adequate support in the record to find that any of the consideration paid by Arbors East was for assets other than real estate and, if the record supported the conclusion that the sale was bulk sale, to determine the proper allocation of the sale price. In the case at bar, the subject of the appraisal, the Jetway property, was a vacant lot, unimproved, and non-income producing. There was no allegation or indication that the BOR did not comply with the duty to provide the complete record. Last, and most significantly, here, the BTA did carefully consider the Koon after-the-fact appraisal as well as the audio of Koon's testimony and gave a reasoned analysis for discounting the weight of the same and not accepting the Koon allocation of $275,000 rather than the $90,000 allocation indicated in the purchase contract.

> the-fact appraisal evidence offered to demonstrate that the original allocation set forth on the conveyance-fee statement did not reflect the true value of the real-estate component of the sale. *Buckeye Terminals, L.L.C. v. Franklin Cty. Bd. of Revision*, 152 Ohio St.3d 86, 2017-Ohio-7664, 93 N.E.3d 914, ¶ 35.

{¶ 35} An owner of a property has the burden to show the impropriety of the allocated sales price. In *Bedford Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision*, 132 Ohio St.3d 371, 2012-Ohio-2844, ¶ 26, 32-33. CCA argues the evidence it presented in the form of the Koon appraisal shows the impropriety of the $90,000 allocation in the purchase contract to the Jetway property. As noted above, the Koon appraisal addressed only the value of the Jetway property, and Koon opined the value of the property was $275,000 or $55,000 per acre. He supported his opinion with a chart referred to as a "Summary of Comparable Land Sales and Listings." (Koon Appraisal at D-16.) Koon stated the comparable listings were of land within close proximity to the subject site but that "the number of comparable sales is limited." (Koon Appraisal at D-1.) The chart included the purchase date and purchase price of four properties. It also included the listing date and listing price of three properties, one of which was the Jetway and Masonry properties which were listed as being offered for sale together in January 2017 with a listing price of $518,900 or $65,017 per acre. Koon also noted regarding the Jetway and Masonry properties that they were "recently in contract in 2018 for approximately $55,000 per acre[,] [t]hough ultimately, this sale did not close."[12] (Koon Appraisal at D-21.) Koon further stated it is his understanding "according to a representative of the property owner, that this sale ultimately did not close, and the property remains on the market for sale with RS Garek and Associates for $512,850, or approximately $65,000 per acre." (Koon Appraisal at A-6) In his appraisal, Koon stated he did not consider the March 6, 2015 sale of the properties because:

> It is noted that the subject's owner, CCA Development LLC, acquired non-subject parcel 010-25595[7] on March 5, 2016. The property was included as a package to acquire an improved property in the central business district, and the owner's

---

[12] There is included in the BOR record a Real Estate Purchase Contract signed by CCA as the seller and John Effah as the buyer, on June 11-12, 2018, that listed the purchase price of $438,900 ($55,000 per acre) for two parcels: the Jetway and Masonry properties.

representative indicated the transfer price was not reflective of the value of the vacant parcel.

Similarly, we have not included the 2015 sale of the subject as a comparable sale, because the property transferred with five other Arena District parcels which were of primary interest to the buyer. *Reportedly*, the sale price is not reflective of market value. This is also demonstrated in the marketing history of the subject since it last transferred. Since this time, it has been on the market along with the superior adjacent parcel to the south (with road access) for no more than $65,000 per acre. Therefore, the 2015 acquisition of the subject is not considered to be pertinent to our analysis and has not been utilized as a comparable sale.

(Emphasis added.) (Koon Appraisal at D-17.)

{¶ 36} The BTA observed that the information on which Koon relied did not come from anyone with firsthand knowledge of the sale. The BTA also observed that a listing price is aspirational as contrasted with an actual sale price. The BTA noted as follows:

Furthermore, we note that the BOE objected to any consideration of Koon's oral or written testimony about the facts and circumstances of the subject sale; the BOR failed to expressly rule on the objection. We now sustain the objection. No one with firsthand knowledge of the subject sale testified at the BOR hearing or this Board's hearing. At the BOR hearing, Koon conceded that he did not speak to anyone with firsthand knowledge of the sale and that he spoke to the spouse of an owner in the corporate entity that owns the subject properties. Without firsthand knowledge of the sale, we find that Koon's assertions regarding the negotiations and details of the overall transaction are unreliable hearsay to the extent that he merely reiterated statements made to him as we cannot verify their veracity. * * * Additionally, while Koon's appraisal report will be given its appropriate evidentiary weight, because the reliability of the March 2015 sale is a key issue to be determined by this Board, we will not abdicate our fact-finding authority to an expert witness with respect to this material fact.

* * *

[Koon] seemingly rejected the sale because he concluded that it was not conducted at arm's-length; however, no information that is properly within the appraisal report supports such a finding. As noted above, no one with firsthand knowledge of the facts and circumstances of the subject sale testified at any

level of these proceedings. We are, therefore, left to speculate.* * * To the extent that the property owner or Koon implied that the subject sale was offered for sale on a "take it or leave it" basis, this Board has consistently rejected that argument.

We acknowledge that the contents of the appraisal report certainly suggest that the $90,000 allocation to parcel 010-255857 might not reflect its value. As noted above, Koon relied upon the $65,017 per acre, or $518,900 asking price of parcel 010-255857, and the 2.98-acre adjacent parcel, from January 2017. However, "a listing price, in essence an aspirational selling price, is not conclusively probative or what a willing buyer would pay for the property in an arm's-length transaction and is therefore not conclusively probative of actual market value." * * * As for the remaining comparable sales, we do not find them to be more competent, credible, and probative tha[n] the recent, arm's-length sale of parcel 010-255857.

We are mindful of our duty to independently determine the subject property's value. * * * In doing so, we find that none of the evidence that is properly in the record rebuts the presumptions accorded to the subject sale. We find therefore, that the subject properties shall be valued consistent with the parties' agreed allocation as highlighted in the purchase agreement. Specifically, for [the Arena District properties], their combined allocated value of $1,760,000 will be further allocated in accordance with the auditor's initial values. *FirstCal Industrial 2 Acquisition LLC v. Franklin Cty. Bd. of Revision*, 125 Ohio St.3d 485, 2010-Ohio-1921.

(Decision at 4, 8-9.)

{¶ 37} This court will affirm the BTA's rulings on credibility of witnesses and weight attributed to evidence if the BTA has exercised sound discretion in rendering these rulings. *Campbell Soup Co. v. Tracy, Tax Commr.*, 88 Ohio St.3d 473, 477-78 (2000). Furthermore, the Supreme Court has held with regard to the weighing of appraisals:

First, the case law makes clear that "the weighing of evidence and the assessment of credibility as regards both of the appraisals are the statutory job of the BTA." The BTA exercises " 'wide discretion in determining the weight to be given to the evidence and the credibility of the witnesses that come before it.' "

Second, the case law makes clear that the BTA has discretion to depart from any particular appraisal opinion of value and independently determine a value based on whatever evidence in the record the BTA finds to be the most probative.

(Internal citations omitted.) *Groveport Madison Local Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 155 Ohio St.3d 247, 2018-Ohio-4286, ¶ 10-11.

{¶ 38} Finally, in *Bedford Bd. of Edn.*, the Supreme Court remanded a case to the BTA to determine whether testimony of an appraiser with personal knowledge of the sales transaction negated the validity of allocation in a sales contract. *Id.* at ¶ 32-33. *Bedford Bd. of Edn.* held:

While *FirstCal* does articulate the starting point for the present case, it does not furnish guidance for evaluating the testimony offered by [the appraiser] at the BOR hearing. In this case, as in *FirstCal*, it is the burden of [the owner] to present evidence negating the validity of using the allocated sale price. But the *FirstCal* court simply did not confront a situation where *a witness with some involvement in the transaction* ascribed tax motives to the allocation. The latter circumstance necessitates the remand in the present case.

(Emphasis added.) *Id.* at ¶ 33.

{¶ 39} In the case before us, CCA did not present any testimony or other evidence of a witness with some involvement in the transaction of the sale of the properties and the reasons for the allocation of the sales price. Koon stated in the appraisal:

*Reportedly*, the subject's owner acquired both the subject and the adjacent parcel strictly as a means of enticing the previous owner to part with the five central business district parcels to "round out" adjacent holdings owned by the subject's owner or related entities. Most importantly to this appraisal, the *owner's representative* indicated the transfer prices were not reflective of the value of the subject as they effectively overpaid for the subject and adjacent Jetway Boulevard site in order to "round out" the owner's Arena District real estate holdings.

(Emphasis added.) (Koon Appraisal at A5-6.) The appraisal contains no indication who the owner's representative was and whether the owner's representative was personally involved in the sales transaction or the determination of allocation reflected in the sales transaction. The AE's analysis of Koon's appraisal and testimony is deliberate and well-

reasoned. We cannot say the BTA abused its discretion in discounting Koon's appraisal and testimony.

{¶ 40} Therefore, we find the BTA acted reasonably and lawfully and did not abuse its discretion in not according additional weight to the Koon appraisal sufficient to negate the validity of the $90,000 allocated price to the Jetway property and, thus, applying the *FirstCal* formula allocation to the Arena District properties.

{¶ 41} Accordingly, we overrule the third assignment of error.

## IV. Conclusion

{¶ 42} Having overruled CCA's three assignments of error, we affirm the decision of the Ohio Board of Tax Appeals.

*Judgment affirmed.*

MENTEL and McGRATH, JJ., concur

_____